# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

CALVIN O'NEIL JACKSON,
                    *Petitioner-Appellant,*

            v.

STATE OF NEVADA; BRIAN
SANDOVAL; ROBERT LEGRAND,
Warden,

                    *Respondents-Appellees.*

No. 09-17239

D.C. No.
3:03-cv-00257-
RLH-RAM

OPINION

Appeal from the United States District Court
for the District of Nevada
Roger L. Hunt, Senior District Judge, Presiding

Argued and Submitted
April 19, 2012—San Francisco, California

Filed August 6, 2012

Before: Alfred T. Goodwin, Stephen Reinhardt, and
Mary H. Murguia, Circuit Judges.

Opinion by Judge Reinhardt;
Dissent by Judge Goodwin

8657

## COUNSEL

Rene L. Valladares, Federal Public Defender, and Lori C. Teicher (argued), First Assistant Public Defender, Las Vegas, Nevada, for the appellant.

Catherine Conrtez Masto, Attorney General and Jaime J. Resch (argued), Senior Deputy Attorney General, Las Vegas, Nevada, for the appellee.

## OPINION

REINHARDT, Circuit Judge:

In January 1999, Calvin Jackson was charged with six counts related to the sexual assault of his on-again, off-again girlfriend of ten years, Annette Heathmon. He was found guilty of forcing his way into her apartment, threatening her with a screwdriver, and forcing her to perform oral sex and have vaginal sexual intercourse. Jackson denied that an assault occurred and claimed that he and Heathmon had consensual sex. At trial, the court prevented Jackson from presenting testimony from police witnesses to support his defense that Heathmon made false claims against him in the past alleging physical or sexual assault, and that this was another instance of her false accusations. It also prevented Jackson from cross-examining Heathmon about prior acts of prostitution. Jackson was convicted, and contends that the trial court's rulings denied him his constitutional right to present a complete defense and to confront the complaining witness under the Sixth and Fourteenth Amendments. We agree as to his claim that his right to present a defense was unconstitutionally abridged, and hold that the state court's conclusion to the contrary was an unreasonable application of clearly established federal law. We therefore reverse and remand to the district court for the conditional issuance of the writ.

## BACKGROUND

Calvin Jackson and Annette Heathmon were involved in a turbulent, on-again, off-again relationship for about ten years. In 1998, Heathmon broke up with Jackson and moved into an apartment complex. Although Jackson visited Heathmon at the complex in an apartment she shared with a friend, when she moved out of that apartment and into her own unit she did not inform Jackson where she had moved.

On October 21, 1998, the same night that Annette Heathmon moved into her new apartment, a mutual friend named

Willie Williams knocked on Heathmon's door accompanied by Jackson, who was not initially visible to Heathmon. According to Heathmon, Jackson forced his way into her apartment, threatened to stab her with a screwdriver if she did not agree to have sex with him, raped her and beat her. While Jackson was in her apartment, Heathmon testified, he cut the clothes hanging in her closet with a knife that she kept with her on her bed, ripped the phone from the wall, and stole a ring from her dresser and some food from the freezer. Jackson left the apartment dragging Heathmon with him, demanding that she walk with him to his car. As Heathmon was being led away from the apartment by Jackson, the pair encountered Fred Webb, a security guard at the complex whom Heathmon had been seeing romantically. When Webb came towards them, Jackson let go of Heathmon and left the scene. She told Webb that Jackson had cut up her clothes, and demanded that Webb pursue him. Although Webb caught up with Jackson, he did not detain him at the scene and Jackson left. Jackson was ultimately arrested and charged with burglary, battery with the intent to commit a crime, first degree kidnapping with the use of a deadly weapon, and two counts of sexual assault with the use of a deadly weapon and robbery with the use of a deadly weapon.

Although Heathmon submitted a letter recanting her accusations against Jackson, she ultimately recanted that recantation and testified to the assault at trial. In her testimony, Heathmon discussed other instances in which Jackson had allegedly physically or sexually assaulted her but had not been charged with any crime. In response, Jackson sought to introduce testimony from officers who had responded to or investigated Heathmon's previous claims of assault and found that her claims were not substantiated by the physical evidence at the scene or expressed disbelief as to her version of the events. The district court precluded this testimony, as well as counsel's attempt to cross-examine Heathmon regarding any prior acts of prostitution. Jackson was convicted of burglary, battery with the intent to commit a crime, first degree

kidnapping with the use of a deadly weapon, and two counts of sexual assault with the use of a deadly weapon.

After the jury returned a guilty verdict, Jackson challenged his conviction on direct appeal, alleging that the district court's rulings denied him his right to present a defense and to confront the witness against him. On appeal, the Nevada Supreme Court rejected Jackson's contention that the district court's evidentiary rulings violated his due process right to present a defense.[1] In rejecting Jackson's appeal, the Nevada Supreme Court implicitly concluded that the excluded evidence was neither relevant nor material to his defense. In holding that the trial court acted appropriately, it additionally relied on the state rule of evidence barring the introduction of extrinsic evidence to challenge the credibility of a witness and held that the exception to that rule, set forth in *Miller v. Nevada*, 779 P.2d 87 (Nev. 1989), did not apply. Under *Miller*, if a criminal defendant accused of a sexual assault seeks to introduce evidence that the claimant has made prior false claims of sexual assault, the defendant must provide written notice to the trial court of his intent, and the court must conduct a hearing to determine its admissibility. *Id.* at 89-90. On review of Jackson's appeal, the Nevada Supreme Court held that the record did not reveal that Jackson had complied with the *Miller* procedure, and thus that the trial court appropriately excluded the evidence due to Jackson's noncompliance with the state evidentiary rule.

After exhausting his habeas appeals in the state court, Jackson filed a petition in the district court, again asserting that the trial court's ruling had denied him his right to present a defense and to confront the witness against him. The district court denied relief, and Jackson was granted a certificate of appeal on these two issues.[2]

---

[1]The Nevada court also held, in a footnote and without discussion, that all of his remaining claims were without merit.

[2]We conclude that the confrontation claim has no merit and dispose of it summarily at the end of this opinion. Jackson raised additional claims

## DISCUSSION

### I.

### A.

Jackson's petition was filed after April 24, 1996, the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), thus AEDPA governs this habeas petition. Under AEDPA, a federal court may not grant habeas to an individual in state custody with respect to any claim which was adjudicated on the merits in state court proceedings unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). In determining whether a state court decision was "contrary to" or involved "an unreasonable application of" Supreme Court precedent, the Court has explained that:

> A state-court decision is contrary to this Court's clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases, or if it confronts a set of facts that is materially indistinguishable from a decision of this Court but reaches a different result. A state-court decision

in the district court, but was denied relief. A certificate of appeal was not granted as to any of Jackson's other claims; thus they are not relevant to this appeal.

involves an unreasonable application of this Court's clearly established precedents if the state court applies this Court's precedents to the facts in an objectively unreasonable manner.

*Brown v. Payton*, 544 U.S. 133, 141 (2005) (internal citations omitted).

**[1]** A criminal defendant has a well-recognized constitutional right to present a complete defense. *Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("Whether rooted directly in the Due Process Clause of the Fourteenth Amendment, or in the Compulsory Process or Confrontation clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a 'meaningful opportunity to present a complete defense.' "). Necessary to the realization of this right is the ability to present evidence, including the testimony of witnesses. *Washington v. Texas*, 388 U.S. 14, 19 (1967) ("The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense."). This right is not unlimited, however, and a defendant does not have an absolute right to present evidence, no matter how minimal its significance or doubtful its source. *United States v. Scheffer*, 523 U.S. 303, 309-11 (1998). Rather, the right itself is only implicated when the evidence the defendant seeks to admit is "relevant and material, and . . . vital to the defense." *Washington*, 388 U.S. at 16. Additionally, a violation of the right to present a defense does not occur any time such evidence is excluded, but rather only when its exclusion is "arbitrary or disproportionate to the purposes [the exclusionary rule is] designed to serve." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (internal citation and quotation marks omitted); *Michigan v. Lucas*, 500 U.S.

145, 151 (1991). This is true even if the rule under which it is excluded is "respected [,] . . . frequently applied," and otherwise constitutional. *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). If the "mechanical" application of such a rule would "defeat the ends of justice," then the rule must yield to those ends. *Id.* Thus, in each instance where a criminal defendant asserts that the exclusion of evidence at trial violated his right to present a defense, we must consider the value of the evidence in relation to the purposes purportedly served by its exclusion to determine whether a constitutional violation has occurred.

In performing this analysis regarding a petitioner whose appeal is controlled by AEDPA, we must determine whether the state court's decision resolving those issues was either contrary to, or an unreasonable application of, Supreme Court precedent relating to this constitutional right. In this case, the Nevada Supreme Court correctly recognized that Jackson's claim regarding the exclusion of the witness testimony was grounded in his right "to present witnesses to establish a defense."³ It observed that this right was qualified, and that the proffered evidence must be "relevant and material to the defense," citing *Washington v. Texas*, 388 U.S. 14 (1967), and implicitly concluded that the evidence Jackson sought to adduce did not satisfy this criterion. It additionally relied on the state's general proscription against the admission of extrinsic evidence going to a witness's credibility and Jackson's failure to comply with the *Miller* rule in concluding that the exclusion of the evidence was justified. The state court correctly recognized that for the exclusion of evidence to amount to a constitutional violation, the evidence must be relevant and material. Because it concluded that the evidence

---

³On review, we consider the last reasoned decision of the state court. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004). For Jackson's claim that the evidentiary ruling denied him his right to present a defense, the relevant decision is the Nevada Supreme Court decision on direct appeal.

was immaterial, it did not consider whether the total exclusion of the witness testimony was disproportionate to the purposes served by the evidentiary rules cited. The Nevada Supreme Court recognized and applied the correct legal principle, and there is no Supreme Court case that presents a materially indistinguishable set of facts, thus its holding was not contrary to established law. Habeas relief is warranted, however, if, under the facts present in this case, the determination by the Nevada Court that the exclusion of the evidence did not effectively preclude Jackson from presenting a complete defense was objectively unreasonable.

## B.

**[2]** Jackson's defense was that the assault never took place and that he and Heathmon engaged in consensual sex. He contended that Heathmon used the police as a means of exercising control over him whenever they argued, and that her allegations against him were fabricated in this instance, just as they had been in prior instances when the police were called to respond to her claims. The evidence that he sought to introduce in furtherance of this defense was testimony from officers who responded to Heathmon's prior allegations of abuse. Prior to trial, Jackson submitted copies of police reports from these prior instances along with his motion to reconsider his earlier motion to dismiss. Included in the report were statements by the responding or investigating officers, in which they expressed doubt about Heathmon's claims or noted inconsistencies between her statements and the physical evidence they observed. Such testimony was clearly relevant to Jackson's defense that Heathmon lied regarding her prior complaints and made false statements to the police alleging that he had abused her.[4]

---

[4]In addition to undermining Heathmon's credibility and supporting his theory that she had an improper motive for her allegations, Jackson also sought to use this evidence to present an alternative explanation for Heathmon's initial refusal to testify: while the prosecution elicited testimony

One incident included within these reports occurred in March, 1995, when Officer Stiles responded to an alleged battery, and encountered Heathmon, who asserted that "for unexplained reasons [Jackson] reportedly became enraged at [Heathmon] and began to beat her up by striking her with his fists and when she fell down, he reportedly kicked her and stomped on her chest." Stiles, however, reported that he observed no physical injuries to Heathmon, nor did he "observe her to be dirty from rolling on the floor nor were her clothing in a disar[r]ay, as you might expect in a situation such as this." The officer declined to arrest Jackson.

Another incident documented in the police reports presented by the defense occurred on May 7, 1995. This incident was discussed extensively by Heathmon in her trial testimony. According to Heathmon, she was riding in a car driven by a friend when the car stopped in front of Jackson's home. She testified that he pulled her out of the car, dragged her across the lawn, where a number of his friends were gathered, and into the house where he beat and raped her. Officer Marscheck responded to the scene and reported that he "could find no signs of a sexual assault," and that the witness, Jackson's grandmother who was living in the house at the time, related that she heard Jackson and Heathmon arguing but did not see Jackson physically or sexually assault Heathmon. Marscheck's report additionally noted that "[d]uring [his] investigation with [Heathmon] [he] noted no sense of fear, injury or anything other than anger to get Jackson in jail." The investigating officer assigned to the case, Officer Risenhoover, ultimately closed the case, and, after several failed attempts to contact Heathmon, concluded that "upon reviewing the case, [he] found it questionable the event occurred as reported."

---

that she was discouraged out of fear, Jackson attempted to show that she never intended her false claims to be pursued to this extent and was disinclined to testify because of the falsity of her claims. This defense was supported by Heathmon's admission in her cross-examination that the case had gone on further than she really wanted it to.

**[3]** Evidence that Heathmon had, on prior occasions, made claims of assault that were contradicted or uncorroborated by the evidence observed by the responding or investigating officers would be relevant to Jackson's defense that the allegations by Heathmon were false in this instance as well. When presented with a trial court's exclusion of evidence similar to the excluded evidence in Jackson's case, we have recognized that such testimony was highly relevant to the defense and that its total exclusion was disproportionate to whatever underlying interests the exclusion was intended to serve.[5]

In *Fowler v. Sacramento Co. Sheriff's Dept.*, 421 F.3d 1027 (9th Cir. 2005), this court reversed the district court's denial of habeas to a petitioner who had been convicted of annoying or molesting a minor. In *Fowler*, the defendant was accused of touching his girlfriend's fourteen-year-old daughter in a sexual manner. At trial, the district court prevented the defense from presenting evidence that the complainant had previously accused one of her mother's former boyfriends of touching her inappropriately and that the local police concluded this allegation was "unfounded." *Id.* at 1032-33. The defense sought to introduce evidence of this prior allegation by cross-examining the complainant and by introducing extrinsic evidence in the form of police reports and testimony from the accused and the officers who investigated the incident. *Id.* at 1040 & n.9. The defense argued that this evidence illustrated the complainant's tendency to "[mis]perceive[ ], exaggerate[ ] or overreact," in relation to her interactions with adult men, and revealed a disposition towards untruthfulness. *Id.* at 1033 (alterations in original) (internal quotation marks omitted). Although the prior incident was not identical, did not involve the same alleged perpetrator, and it had not been

---

[5]Although the prior decisions in this circuit are not sufficient to establish "clearly established" precedent, "[o]ur cases may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law." *Duhaime v. Ducharme,* 200 F.3d 597, 600 (9th Cir. 2000).

conclusively established that the complainant's earlier accusation was false, this court recognized the clear relevance of the excluded evidence. In concluding that the petitioner's constitutional right had been violated, we held that where the evidence "might reasonably have influenced the jury's assessment of [the complainant's] reliability or credibility, absent sufficient countervailing interests, 'the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on [the complainant's] testimony which provided a crucial link in the proof.' " *Id.* at 1040 (quoting *Davis v. Alaska*, 415 U.S. 308, 317 (1974)). Under these facts, we held that the state court's determination that the exclusion of this highly relevant evidence was "not unreasonable, arbitrary or disproportionate given its concerns was itself objectively unreasonable." *Id.* at 1041.

In *Holley v. Yarborough*, 568 F.3d 1091, 1099 (9th Cir. 2009), we again considered whether the trial court's exclusion of evidence bearing on the claimant's credibility violated the defendant's due process rights. Again we concluded that the trial court's ruling that prohibited the habeas petitioner from presenting evidence at trial that bore on the complainant's credibility resulted in a constitutional violation, and we remanded for issuance of the writ. In *Holley*, the habeas petitioner was convicted of child molestation for sexually touching the eleven-year-old daughter of an acquaintance. At trial, Holley sought to introduce evidence that the complainant had previously made comments to her friends regarding a prior sexual encounter and had claimed that other boys had expressed a desire to engage in sexual acts with her. This evidence was intended to challenge the prosecution's portrayal of her as a little girl who "would not fabricate things of a sexual nature." *Id.* at 1099. Although there was no evidence as to the falsity of the complainant's prior statements, this court agreed with the defendant that this evidence displayed her "active sexual imagination." *Id.* at 1100. We recognized that with the knowledge of these prior statements, a jury may reasonably

have challenged the credibility and reliability of her claims. We therefore held that the state court was objectively unreasonable in its conclusion that these statements were properly excluded as irrelevant, unduly prejudicial, and insufficiently probative to justify the amount of time needed for their introduction. In so holding, we noted that the evidence that would have been elicited through the cross-examination of the complainant and the introduction of witness testimony, was "clearly relevant to impeach [the complainant], and thus [to] allow the jury to evaluate the credibility of her allegations." *Id.* at 1099. We determined that the total exclusion of this evidence was both "unreasonable and disproportionate" to the purposes served by the evidentiary rules invoked by the state court, *id.*, and that had the jury known of the sexual comments made by the complaint to others it "might reasonably have questioned her [accusations]." *Id.* at 1100.

**[4]** Our conclusions in *Fowler* and *Holley* apply even more strongly to the evidence in Jackson's case.**⁶** Heathmon's credibility was crucial to Jackson's prosecution, because there was minimal physical evidence suggesting that she had been physically or sexually assaulted, and the weapon, a screwdriver, was never found, nor was it observed by the witness that saw Jackson and Heathmon together immediately following the assault. The jury therefore had to rely on Heathmon's recita-

---

**⁶**Both *Fowler* and *Holley* involved a trial court's limitation on the scope of cross-examination as well as its rulings that prevented the introduction of extrinsic evidence to challenge the complainant's credibility. While our discussion of those cases were grounded in the confrontation clause of the Sixth Amendment, the Supreme Court has held that the analysis is the same whether the exclusion is framed as a limitation on the right to confront or the right to present a defense; in either case, a constitutional violation occurs only when the exclusion is arbitrary or disproportionate to the purposes of the rule under which it is excluded. *Michigan v. Lucas*, 500 U.S. 145, 151 (1991) ("Restrictions on a criminal defendant's rights to confront adverse witnesses and to present evidence 'may not be arbitrary or disproportionate to the purposes they are designed to serve.' " (internal citation omitted)).

tion of the facts — as presented in her own testimony at trial and as related through the testimony of other witnesses based on statements she made around the time of the assault — to conclude that Jackson had indeed assaulted her, and that he was wielding a weapon at the time. Evidence that would have undermined her credibility was central to Jackson's theory that this was just another instance in which Heathmon made false or exaggerated claims against him to the police. It is reasonable to conclude that witness testimony that Heathmon made uncorroborated claims against Jackson in the past, claims that were believed by impartial officers to be inaccurate and inconsistent with the physical evidence, would have influenced the jury's assessment of Heathmon's credibility.

There are instances in which this court has determined that the preclusion of collateral evidence regarding false accusations did not implicate the defendant's constitutional right and that its exclusion was a proper exercise of the discretion of the trial court. In these cases, however, the excluded evidence was of marginal relevance to the defense. In *Hughes v. Raines*, 641 F.2d 790 (9th Cir. 1981), for instance, the petitioner, convicted of attempted rape, argued that the trial court improperly excluded evidence that the complainant had previously accused a man of attempted rape. We held that the evidence was irrelevant to the complainant's accusation against the petitioner due to the vastly differing circumstances under which the two incidents were said to have occurred. *Id.* at 793. We held that the petitioner's constitutional rights were not implicated in the introduction of evidence that did not "establish bias against the defendant or for the prosecution [but was] merely . . . to attack the general credibility of the witness on the basis of an unrelated prior incident." *Id.* We contrasted the excluded testimony in *Hughes* with that recognized by the Supreme Court as implicating a defendant's due process rights, such as evidence "directed toward revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to *issues* or *personalities* in the case at hand." *Id.* (emphasis added) (quoting *Davis*, 415 U.S. at 316).

The excluded evidence in Jackson's trial involved prior accusations against the same defendant by the same complainant and, Jackson alleged, was part of a pattern of false accusations of physical and sexual abuse by Heathmon made throughout the course of their relationship. Such evidence clearly "relate[s] directly to issues or personalities in the case at hand," *id.*, and falls well within the category of testimony whose exclusion may implicate a defendant's constitutional rights.

We also affirmed the district court's denial of habeas in *Fenenbock v. Dir. of Corr. for California*, 681 F.3d 968 (9th Cir. 2012), in which the petitioner argued that the trial court's exclusion of evidence related to a witness's false accusation against a third party resulted in a constitutional violation. In *Fenenbock*, the witness was a juvenile who had observed the crime for which the petitioner was charged. The defense sought to admit witness testimony that he made an unrelated and allegedly false report that his foster father had threatened his foster mother with a firearm. *Id.* at 972. We recognized that there is no absolute right "to impeachment via extrinsic evidence relating to the truth of a collateral out-of-court statement," and that no existing Supreme Court precedent required the admission of evidence regarding such a purely collateral matter. *Id.* at 977. In doing so, however, we distinguished Fenenbock's case from those in which the Supreme Court has held that the defendant's due process rights are implicated because the excluded evidence regarding a witness's credibility went to his bias or motive to lie. *Id.* at 977 & n.11. This is precisely the nature of the evidence excluded in Jackson's case: evidence that Heathmon previously made false accusations against him as part of their relationship provided a motive for her allegedly false testimony in this instance, and was thus both relevant and constitutionally-protected under recognized Supreme Court precedent.[7]

---

[7]The trial court also explicitly recognized that the officers' testimony went to the question of whether Heathmon had "some motive of bad intent," but found that the state rules precluded the introduction of additional witnesses on this matter.

Our holding in *Fenenbock* also does not support a conclusion that a constitutional violation did not occur in this case because the excluded evidence in Jackson's trial was neither collateral — because it related to the core of his defense that Heathmon had a history of making false accusations *against him* —and it was not intended to impeach an out of court statement. To the contrary, the officers' testimony would have directly rebutted Heathmon's own in-court statements that Jackson had previously assaulted her on several occasions, including the May 7, 1995 incident, to which she had already testified at length. Thus, even an appropriate limitation on the introduction of impeachment testimony on collateral or out of court statements could not justify the total exclusion of Jackson's evidence in this instance.

## C.

Had the court concluded that the evidence Jackson sought to admit was relevant and material, it would then have had to consider whether its exclusion under the applicable evidentiary rules was reasonable, or if it was disproportionate to the interests served by those rules. The proportionality between the excluded evidence and the interests served by the evidentiary rule is the relevant constitutional question regardless whether the basis for exclusion is a blanket prohibition on a certain type of evidence or the defendant's failure to strictly comply with a notice provision of an otherwise valid evidentiary rule. *Holmes*, 547 U.S. at 324; *Lucas,* 500 U.S. at 1747; *LaJoie v. Thompson*, 217 F.3d 663, 670 & n.8 (9th Cir. 2000).

**[5]** Although the Nevada Supreme Court explicitly considered only whether the evidence was excludable under *Miller*, the state always has a recognized interest in excluding evidence that "poses an undue risk of harassment, prejudice, [or] confusion of the issues." *Crane,* 476 U.S. at 689-90 (alterations in original) (internal citations and quotation marks omitted). In this case, however, a consideration of the state's interests does not support the total exclusion of the officers'

testimony in light of its substantial relevance to Jackson's defense.[8]

As in *Holley* and *Fowler*, the complete exclusion of the relevant testimony was disproportionate to the limited interests that could have been served by the exclusion of such evidence. As discussed above, the evidence, if credited, likely would have had a significant effect on the jurors' perceptions of Heathmon's credibility. "Any prejudice the jury might have developed as a result [of this evidence] would have been to discredit her claims." *Holley*, 568 F.3d at 1100. This potential effect on the jury's assessment of Heathmon is precisely what renders the evidence relevant in the first instance and is necessary to the defendant's ability to defend against the prosecution's charges. The officers' testimony would have been the only evidence presented by the defendant to suggest that Heathmon had a pattern of making false accusations against him and thus would not have been cumulative of any other evidence that had been introduced.

The officers' testimony that they did not credit Heathmon's past allegations of abuse was no more likely to confuse the issues than the extensive discussion of these prior incidents that the trial court allowed into evidence. At trial there was substantial evidence admitted that referred to these past alleged assaults including Heathmon's testimony regarding past instances in which she claimed to have been assaulted by Jackson and an officer's testimony regarding the existence of the other reports of domestic violence made by Heathmon

---

[8]The state court did not discuss the perceived interests served by the exclusion of Jackson's evidence under any rule, nor did it consider these interests in relation to his ability to present a complete defense in the absence of that evidence to determine whether its exclusion was disproportionate to those interests. The petitioner argues only that this was an unreasonable application of federal law, and we therefore need not consider whether the state court's opinion, by failing to conduct the necessary analysis, resulted in a decision that was "contrary to" federal law under 28 U.S.C. § 2254(d)(1).

against Jackson. The jury was required to consider this evidence, not for its truth, but to assess Heathmon's credibility and state of mind. The evidence Jackson sought to introduce was neither confusing nor prejudicial in its own right, and it was far less so on both counts than the evidence admitted by the trial court. Additionally, while the harassment of the victim may be a consideration when excluding evidence of past allegations, the officers' testimony would not have resulted in the harassment of any party, particularly not Heathmon, who had already recounted her version of these past assaults for the jury. If the trial court had concerns regarding the time spent on the officers' testimony, or the possibility of confusion, it could have placed reasonable limits on that testimony, rather than excluding it in full. None of the concerns generally considered in the exclusion of otherwise probative evidence integral to a defendant's ability to present a complete defense therefore justify the total exclusion of the testimonial evidence sought to be introduced.

Although the Nevada Supreme Court did not expressly consider the general concerns underlying the exclusion of any item of relevant information, it did explicitly hold that the evidence was properly excluded for failure to comply with the procedures of *Miller*. *Miller* applies specifically to the admission of prior accusations of sexual assault. 779 P.2d at 90. Not all of the incidents regarding which Jackson sought to introduce testimony, nor all of the incidents testified to by Heathmon, involved claims of sexual assault. Neither *Miller*, nor the legitimate considerations upon which it is based, would therefore apply to all of the testimony excluded by the trial court. In particular, a failure to comply with *Miller* could not have been the basis for excluding testimony regarding the March, 1995 incident in which Officer Stiles reported that Heathmon's allegations of a physical assault by Jackson were inconsistent with his observations at the scene. With regard to evidence related to prior claims of sexual assault, to which the *Miller* procedure would apply, the Nevada Supreme Court was still required to consider whether the application of the

rule resulted in the arbitrary or disproportionate exclusion of material evidence.

In *Lucas*, the Supreme Court reversed a decision by the Michigan Supreme Court that held that any notice and hearing rule that could be applied to preclude the admission of relevant evidence violated the defendant's due process rights. 500 U.S. at 148. The Supreme Court recognized that some notice and hearing requirements may indeed be applied in a manner that violates the defendant's constitutional rights, but it held that Michigan's per se rule that held that any such requirement was unconstitutional was incorrect. *Id.* at 151. Instead, it held that the relevant question is whether the restriction was arbitrary or was disproportionate to the purposes that it was designed to serve, and the Court remanded for the state court to make that determination in the first instance. *Id.* at 151, 153.

We applied the Court's rule from *Lucas* in *LaJoie*, in which the habeas petitioner failed to comply with Oregon's notice rule when he sought to introduce relevant evidence related to the victim's prior sexual assault. 217 F.3d at 670. Petitioner filed a notice of intent seven days before trial, rather than fifteen days, as required under Oregon law. *Id.* at 665. We considered the materiality of the excluded evidence against the purposes served by the fifteen-day notice rule in that case and held that the total exclusion of the evidence was disproportionate to those purposes, and that the mechanical application of the rule resulted in a constitutional violation. *Id.* at 673.

**[6]** In Jackson's case, as in *LaJoie*, the state court failed to do the individual balancing required by *Lucas* to determine whether the exclusion, even if properly authorized under the rule, was disproportionate to the interests served in light of the facts of the defendant's case. *Id*. at 670. ("Because the [state court] did not balance the interests in [the defendant's] particular case, as required by *Lucas*, the district court erred in concluding that the state court decision was not an unrea-

sonable application of clearly established federal law, as determined by the United States Supreme Court."). Neither the *Miller* opinion nor the opinion in Jackson's direct appeal discussed the purposes of the notice provision, but we may assume that it, like the provision in *LaJoie*, was intended to "prevent surprise to the prosecution and the alleged victim, avoid undue trial delay, and protect the alleged victim from needless anxiety concerning the scope of the evidence to be produced at trial." *LaJoie*, 217 F.3d at 670. These concerns must be balanced against the recognized relevance of a victim's prior false allegations of sexual assault in the particular case. *See Miller*, 779 P.2d at 89 ("[I]t is important to recognize in a sexual assault case that the complaining witness' credibility is critical and thus an alleged victim's prior fabricated accusations of sexual abuse or sexual assault are highly probative of a complaining witness' credibility concerning current sexual assault charges.").

Here, Jackson provided the court and opposing counsel with written copies of the officers' statements and explicitly stated his desire to introduce the officers' testimony if evidence regarding Heathmon's allegations of past abuse was admitted. Although Jackson did not comply with the requirements of *Miller*, he nonetheless gave clear advance notice of his desire to present the officers' testimony, and reasserted this desire prior to a hearing on the admissibility of Heathmon's allegations of past abuse by Jackson. While this notice was not sufficient under *Miller*, it nonetheless negated some of the concerns that the *Miller* rule was created to address, such as preventing unfair surprise to the prosecution and victim and avoiding unnecessary delay. Moreover, Heathmon was already prepared to testify — and did testify — as to her version of these prior assaults by Jackson. Thus any possible embarrassment or apprehension by the victim due to uncertainty about the scope of the examination would not have applied under the facts of this case.

**[7]** Although a state court undoubtedly has the authority to enforce procedural rules intended to serve its legitimate inter-

ests in ensuring the orderly administration of justice, it must always do so in light of the constitutional requirement that the exclusion of evidence may not be disproportionate to the interests served by the rule under which it is excluded. *See, e.g. Chambers*, 410 U.S. at 302-03 (holding that otherwise valid state evidentiary rules "as applied in this case" served to "deprive [the defendant] of a fair trial"). Because of the critical importance of the excluded evidence to Jackson's defense, and because under the facts of this case all parties were aware that Heathmon's prior allegations were likely to be introduced at trial and that Jackson sought to counter her testimony with evidence from police officers, the total exclusion of this evidence was disproportionate to the state's interest in its exclusion on account of Jackson's failure to comply with *Miller*.

**[8]** As in *LaJoie*, we conclude that with respect to the trial court's exclusion of evidence regarding the victim's past allegations of sexual abuse, "the sanction of preclusion of this evidence in this case was ' . . . disproportionate' to the purposes of the . . . notice requirement. Therefore, even under a proper application of the *Lucas* test, the decision of the [state court] to preclude the evidence would still amount to 'an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States.' " 217 F.3d at 673 (quoting 28 U.S.C. § 2254(d)(1)).

### D.

**[9]** Although the exclusion of the police officer testimony violated Jackson's right to present a defense, habeas relief is the appropriate remedy only if the constitutional violation resulted in error that was not harmless. "[I]n a § 2254 proceeding[ ] [a] court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in [*Brecht v. Abrahamson*, 507 U.S. 619 (1993)], whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' stan-

dard set forth in *Chapman* [*v. California*, 386 U.S. 18 (1967)]." *Fry v. Pliler*, 551 U.S. 112, 121-22. (2007). To consider whether the standard under *Brecht* has been met, we consider the factors prescribed by the Court in *Delaware v. Van Arsdall*, 475 U.S. 673 (1986), namely: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross-examination otherwise permitted; and (5) the overall strength of the prosecution's case." *Merolillo v. Yates*, 663 F.3d 444, 455 (9th Cir. 2011) (citing *Van Arsdall*, 475 U.S. at 684). In this case, after considering the relevant factors, we conclude that the exclusion of the witness testimony was likely to have had a substantial and injurious effect on the verdict in Jackson's case.

The defense's theory was that there was no assault, and that this was another instance in which Heathmon made false claims to the police against Jackson. Although Heathmon recounted her complaints to various people, there was no physical evidence that an assault had occurred and extremely limited corroboration for Heathmon's claims. Webb, for instance, testified that he did not see any signs of physical injury at the time that he encountered Heathmon and Jackson leaving the building, that he did not see Jackson with a screwdriver, and when he examined Heathmon's closet could not find any clothes that had been cut. The nurse who examined Heathmon after the assault found no signs of bruising and no signs of sexual assault, and the responding officer did not observe any readily visible marks or bruises.

**[10]** The primary evidence against Jackson was therefore Heathmon's own testimony and the testimony of those who related statements that she made around the time of the assault. The only evidence of the presence of the deadly weapon, which accounted for the imposition of three consecutive life sentences against Jackson, was Heathmon's own tes-

timony that Jackson was "holding [the screwdriver] against her neck [and] threatening to put it into her temple."**9** Heathmon initially recanted her claim of assault in a notarized letter produced prior to trial. After she was arrested and detained under a warrant for failing to appear in court, and threatened with a perjury charge, Heathmon agreed to testify. At trial she testified to the original version of the events and stated that she recanted her testimony because she was scared. Evidence from uninterested third parties that "bore persuasive assurances of trustworthiness," *Chambers*, 410 U.S. at 302, that Heathmon had previously made what appeared to be false or exaggerated claims of either physical or sexual abuse would have substantially bolstered Jackson's claim that the sexual assault never occurred. It would also have supported his theory that Heathmon's earlier refusal to testify was based on the falsity of her own claims, not fear of Jackson. There was no other evidence that Jackson produced that could have had the same effect. The excluded evidence was relevant to a critical issue at trial, namely whether the assault occurred, the evidence was crucial to Jackson's defense, and the "excluded evidence, unlike the evidence [from petitioner's family and friends] was not subject to attack on the grounds of bias or self-interest. It was the only unbiased source of corroboration for [petitioner's theory of the defense]." *DePetris v. Kuykendall*, 239 F.3d 1057, 1063-64 (9th Cir. 2001) (first alteration in original) (internal quotation marks and citation omitted).

**[11]** The prosecution introduced minimal evidence that was not dependent on the veracity of Heathmon's own assertions of fact. If the jury discounted Heathmon's testimony and

---

**9**This testimony was inconsistent however, as Heathmon testified at trial that Jackson was holding the screwdriver in his hand and threatened to poke her, while at the preliminary hearing, she testified that the screwdriver was in his pocket, and he did not say how or where he was going to use it. In its cross-examination, the defense asked Heathmon to explain her conflicting testimony, but the State objected, arguing that there was no "inconsistency." The court sustained the objection and informed Heathmon that she need not answer the question.

relied solely on the remaining evidence presented, it may reasonably have found that Jackson was not guilty of some or all of the charges. The state's evidence of guilt was therefore not so overwhelming that we can say there is not a "grave doubt about whether a constitutional error substantially influenced the verdict." *Slovik v. Yates*, 556 F.3d 747, 755 (9th Cir. 2009) (quoting *Parle v. Runnels*, 387 F.3d 1030, 1044 (9th Cir. 2004)).

**[12]** The exclusion of critical evidence that would have served to rebut the testimony of the principal prosecution witness and to directly undermine her credibility constituted a clear violation of Jackson's right to present an adequate defense and we must conclude that this unconstitutional exclusion caused a substantial and injurious influence on the jury's verdict. The state court's decision to the contrary was an unreasonable application of clearly established Supreme Court law.

## II.

Jackson additionally argues that the trial court violated his right to confront the witnesses against him by preventing him from questioning Heathmon about a prior arrest for prostitution. At trial, Jackson's counsel asked Heathmon if she was "hooking" on two different nights. After the prosecution's objection, the jury was told to disregard the question, and no further inquiries were made as to any possible prostitution acts or arrests. Jackson lodged an objection that the court prevented him from questioning the witness regarding prior prostitution arrests. The court upheld its ruling, noting that the nature of the questioning was about *acts* of prostitution, not *arrests* for prostitution, and that the precluded line of questioning was improper.

The Supreme Court has recognized that a defendant's constitutional right to confront the prosecution's witnesses includes the right to impeach the witness through the "intro-

duc[tion] of evidence of a prior criminal conviction of that witness." *Davis*, 415 U.S. at 316. Although Jackson now contends that he was prevented from questioning Heathmon regarding prior arrests for prostitution, the record does not reveal that to be the case.[10] Moreover, even if Heathmon engaged in prior acts of prostitution, this behavior would have no bearing on Jackson's theory of the defense, nor would it suggest that her testimony was motivated by any improper motive or bias. The trial court therefore acted within its discretion to exclude the prostitution questions as irrelevant, and this limitation on Jackson's right of confrontation did not amount to a constitutional violation. *See Hughes*, 641 F.2d at 793 (recognizing that the trial court's exclusion of a generalized attack on the witnesses' credibility, particularly her sexual exploits, did not rise to the level of a constitutional violation due to its minimal relevance).

## CONCLUSION

**[13]** The district court erred in concluding that the state court determination that the exclusion of the police witness testimony did not constitute a violation of Jackson's well established right to present a complete defense. The excluded evidence was relevant and vital to his defense, and the total exclusion of this testimony was arbitrary and disproportionate to the purposes the evidentiary rules were intended to serve. The Nevada Supreme Court decision holding otherwise was an unreasonable application of clearly established United States Supreme Court precedent. We therefore reverse the district court's judgment and remand with directions to issue a conditional writ of habeas corpus, releasing Jackson from

---

[10]The district court adopted the trial court's interpretation of Jackson's questioning of Heathmon, and also concluded that "the trial court did not allow petitioner to question the victim about prior *acts* of prostitution," not merely arrests. (emphasis in original). We review the district court's finding of fact for clear error, and on this record, we cannot say that the district court's conclusion that the defense only attempted to inquire as to prior acts of prostitution was incorrect.

detention unless the state retries him within a reasonable period of time.

**REVERSED and REMANDED.**

GOODWIN, Circuit Judge, dissenting:

I respectfully dissent. The appellant did not present in his appeal to this court a competency-of-counsel question, and I believe that his failure timely to request a *Miller* hearing to support his effort to impeach the complaining witness was a default by the defense. Rejection of the proffered evidence, therefore, was not a constitutional error by the state trial court. The United States District Court for the District of Nevada complied with the requirements of AEDPA. I would affirm the judgment.