NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

NOV 23 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ROBERT IBARRA,<br><br>    Petitioner-Appellant,<br><br>  v.<br><br>W.L. MONTGOMERY, Acting Warden,<br><br>    Respondent-Appellee. | No. 17-56623<br><br>D.C. No. CV-08772-DMG<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Submitted April 15, 2020[**]
Pasadena, California

Before: COLLINS and LEE, Circuit Judges, and PRESNELL,[***] District Judge.

Robert Ibarra appeals from the district court's denial of his petition for a writ

of habeas corpus. We have jurisdiction under 28 U.S.C. § 2253(a), and we affirm.

1. Ibarra was tried and convicted in a California state court for the October

3, 2004 stabbing murder of Elias Silva at an apartment in Goleta, California. After

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes that this case is suitable for decision without oral argument. See FED. R. APP. P. 34(a)(2)(C).

[***] The Honorable Gregory A. Presnell, Senior United States District Court Judge for the Middle District of Florida, sitting by designation.

pleading guilty to a lesser charge and agreeing to cooperate with the State, Robert Galindo testified at Ibarra's trial that Joshua Miracle, Ibarra, and Galindo were together in the apartment when Silva arrived after Galindo lured him there under instructions from Miracle. Galindo also stated that, prior to Silva's arrival, Miracle and Ibarra had brought a duffle bag to the apartment and that Miracle armed himself with a butcher knife. The duffle bag was later found to contain, among other things, a tarp, a pair of gloves, and an October 2, 2004 receipt from Home Depot for these items, and a subsequent examination of surveillance video from the Home Deport showed that Ibarra had been the one to purchase them. Galindo testified that Miracle attacked Silva as soon as Silva arrived but that Galindo immediately fled the apartment and did not actually see Silva being stabbed. When police later found his body at the apartment, Silva had 48 stab wounds. Forensic evidence revealed a mixture of Silva's and Ibarra's blood on Silva's shoe. Ibarra and Miracle were arrested the next day driving Silva's car, and Ibarra had a stab wound on his leg. Silva's blood and Ibarra's blood were also found on Miracle's shoes as well as on a pair of gloves in the car's backseat.

Prior to Ibarra's trial, Miracle pleaded guilty to first degree murder with special circumstances, and at a pre-penalty-phase hearing, Miracle stated that he had pleaded guilty because "I'm guilty of the murder and Ibarra is not." Miracle explained that he had sought "to take responsibility in terms of Ibarra's case and

2

then make myself available to offer exonerating testimony on his behalf at his trial." Miracle was subsequently sentenced to death, and thereafter he made multiple additional statements attesting to Ibarra's innocence, both to Ibarra's investigator and, through Miracle's own investigator, to Ibarra's attorney. In these more detailed statements, Miracle stated, *inter alia*, that Ibarra had not participated in planning Silva's murder, and he claimed that Ibarra's stab wound resulted from the fact that Miracle had "stabbed Ibarra intentionally when [he] thought Ibarra was trying to interfere and help Silva."

When the time came, however, Miracle invoked his Fifth Amendment rights and declined to testify at Ibarra's trial.[1] Ibarra thereupon sought to introduce Miracle's prior statements exculpating Ibarra as statements against penal interest by an unavailable witness, *see* CAL. EVID. CODE § 1230, but the trial court excluded them as insufficiently trustworthy. The trial court subsequently reaffirmed that ruling, and Ibarra was convicted and sentence to life in prison. The California Court of Appeal affirmed, and the California Supreme Court denied review. *People v. Ibarra*, 2014 WL 934445 (Cal. Ct. App. 2014).

Ibarra filed a habeas petition alleging that the state courts' refusal to admit Miracle's statements exculpating Ibarra violated his federal constitutional right to

---

[1] Miracle's appeal before the California Supreme Court was pending at that time. His conviction was later affirmed. *See People v. Miracle*, 430 P.3d 847 (Cal. 2018).

3

present a complete defense under *Chambers v. Mississippi*, 410 U.S. 284 (1973), and its progeny. The district court accepted the magistrate judge's report recommending dismissal and denied a certificate of appealability. We subsequently issued a certificate of appealability limited to the question of "whether [Ibarra] was deprived of his right to present a complete defense when the trial court excluded statements by Joshua Miracle."

2. We reject Ibarra's contention that his federal complete-defense claim was not "adjudicated on the merits in State court proceedings," 28 U.S.C. § 2254(d), and that § 2254(d)'s deferential standards for reviewing such state-court merits decisions are therefore inapplicable.

The parties agree that the "last reasoned" relevant state court decision is the California Court of Appeal's decision affirming Ibarra's conviction. Although Ibarra's principal brief in that court squarely raised the federal complete-defense issue, it was not explicitly mentioned in the state court's decision. Nonetheless, there is a "strong but rebuttable presumption" that "the federal claim was adjudicated on the merits," *Johnson v. Williams*, 568 U.S. 289, 301 (2013), and that presumption is not rebutted here. The right to a complete defense under *Chambers* may require the admission of a hearsay statement that "bears *persuasive assurances of trustworthiness* and is critical to the defense," but it does not include the right to present *unreliable* hearsay statements. *Chia v. Cambra*, 360 F.3d 997,

4

1003 (9th Cir. 2004) (emphasis added); *see also Chambers*, 410 U.S. at 300 (noting that statements at issue there were made "under circumstances that provided considerable assurance of their reliability"); *Rhoades v. Henry*, 638 F.3d 1027, 1035–36 (9th Cir. 2011) (*Chambers* does not require admission of "unreliable" and "untrustworthy" confession).  Here, in upholding the exclusion of Miracle's statements under California Evidence Code § 1230, the California Court of Appeal specifically held that those statements were "not reliable" and not "trustworthy."  *Ibarra*, 2014 WL 934445, at \*4.  Because the court's analysis of that issue thus overlaps with, and is dispositive of, Ibarra's *Chambers* complete-defense issue, the *Johnson* presumption is plainly applicable here and has not been rebutted.  The deferential standard of review under § 2254(d) therefore applies.

3.  Under § 2254(d)'s deferential standard, we may overturn the California Court of Appeal's decision that Miracle's confession was untrustworthy "only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'"  *Nevada v. Jackson*, 569 U.S. 505, 508–09 (2013) (citation omitted).  Because fairminded jurists could find the state court's decision to be consistent with *Chambers* and its Supreme Court progeny, the district court properly denied Ibarra's petition.

5

Fairminded jurists could conclude that, in contrast to *Chambers*, Miracle's statements were not "unquestionably against [his penal] interest" and that they were not made "under circumstances that provided considerable assurance of their reliability." 410 U.S. at 300–01. As the California Court of Appeal explained, Miracle's initial in-court statement was made *after* his conviction, but before his sentencing, and it presented "little risk to his own criminal liability." *Ibarra*, 2014 WL 934445, at \*4; *cf. Lunbery v. Hornbeak*, 605 F.3d 754, 761 (9th Cir. 2010) (*Chambers* controlled where, *inter alia*, statement "was made shortly after the murder" and exposed speaker "to the risk of criminal prosecution"). Although Ibarra argues that Miracle's assertion that he was solely responsible could be viewed as an aggravating factor at his capital sentencing, the state courts permissibly and reasonably drew the opposite conclusion that, in this case, Miracle hoped that "his claim of sole responsibility could inspire leniency in the penalty phase of his own trial." *Ibarra*, 2014 WL 934445, at \*4. The state court also reasonably concluded that the additional, more detailed statements made after Miracle had been sentenced to death were "even less trustworthy because of the time he had to reflect and construct them and because he had so little to lose after he was sentenced to death." *Id*. Finally, the state court reasonably considered, and rejected, Ibarra's contention that, because Miracle's detailed statements were consistent with the physical evidence, they should be deemed to be reliable. The

6

state court held that, because "Miracle had access to all of the physical evidence concerning Silva's murder" and had the "time and opportunity to create a coherent account" that would fit that evidence, this factor did not weigh in favor of finding his statements to be reliable. *Id*. Whether we would have drawn the same conclusion here is irrelevant. Because fairminded jurists could agree with the California court's conclusions, we cannot set it aside under § 2254(d).

**AFFIRMED**.[2]

---

[2] Respondent's unopposed motion for judicial notice of the corrected reporter's transcripts from the files of the state appellate court is **GRANTED**.