**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
**File Name: 10a0770n.06**

**No. 09-1597**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| ERIC LEE BRITT, | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| CAROL R. HOWES, Warden, | ) | EASTERN DISTRICT OF MICHIGAN |
| | ) | |
| Respondent-Appellee. | ) | |

**FILED**
**Dec 16, 2010**
LEONARD GREEN, Clerk

Before: MOORE, SUTTON and McKEAGUE, Circuit Judges.

SUTTON, Circuit Judge. A Michigan jury convicted Eric Britt of second-degree murder and felony firearm possession in connection with the shooting death of Nathan Wilde. The district court rejected his habeas petition, and so do we.

I.

On the night of October 24, 1999, Britt and Wilde were drinking at Britt's house. Around 1:30 a.m., Britt arrived in his pickup truck at his parents' house and told his father, "Nathan Wilde's l[y]ing dead on my kitchen floor. . . . I don't know what I'm gonna do. . . . There's no hope for him." App'x at 106. Britt told his father it was an accident: Wilde had asked to see his gun, and when Britt brought it out, Wilde grabbed it and it went off. His father called 911, drove Britt back to his house and told him not to speak to anyone without a lawyer. The police responded to the call and

met Britt when he arrived. A deputy sheriff asked him what happened, and Britt explained, "[A]n accident happened here and I'm not gonna say anything more without an attorney and that's all I am gonna say." App'x at 135.

The State charged Britt with second-degree murder, M.C.L. 750.317, and possession of a firearm during a felony, M.C.L. 750.227b. The prosecutor introduced Britt's written statement about what happened:

> [L]ater that night we went into my room to look at my gun collection in my gun cabinet.
>
> After that we went into the kitchen and had something to drink. Nathan told me to get my 44. I walk in my room, took it out of the cabinet, walked back to the kitchen to hand it to him and it went off shooting him.

App'x at 152. The State's expert testified that the gun fired "less than three inches" from Wilde's stomach, *id.* at 163, and that it was pointed toward his navel and slightly downward. He testified further that the gun could not have gone off without someone pulling the trigger and that if Wilde had grabbed the gun, he would have expected to see gunshot residue and possibly powder burns on Wilde's hands but saw neither. Britt's father testified that Britt had "a big blister on . . . his right hand," *id.* at 110, which Britt claimed came from touching the stove. The jury found him guilty on both counts.

After a series of unsuccessful appeals in state court, Britt filed this habeas petition. The district court denied relief but granted a certificate of appealability on three claims: sufficiency of

No. 09-1597
*Britt v. Howes*

the evidence, prosecutorial misconduct and ineffective assistance of counsel for failing to object to the prosecutor's misconduct.

II.

Britt first argues that the State presented insufficient evidence of "malice" to support his murder conviction. A conviction rests on constitutionally insufficient evidence if, after "[a] review of the record in the light most favorable to the prosecution," no "rational factfinder could readily have found the petitioner guilty beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324 (1979). The Antiterrorism and Effective Death Penalty Act (AEDPA) prohibits granting habeas relief unless the state court's decision was "contrary to, or . . . an unreasonable application of" Supreme Court precedent. 28 U.S.C. § 2254(d)(1).

Under Michigan law, the State can show malice—the intent element of the murder statute—by establishing at least one of three things: "[1] the intent to kill, [2] the intent to cause great bodily harm, or [3] the intent to do an act in wanton and wilful disregard of the likelihood that the natural tendency of such behavior is to cause death or great bodily harm." *People v. Goecke*, 579 N.W.2d 868, 878 (Mich. 1998). In holding that the evidence established malice, the Michigan Court of Appeals reasoned:

> The evidence established that the victim was shot to death. Although defendant maintained that the gun discharged accidentally when the victim attempted to grab it as defendant was handing it to him, the physical evidence and testimony indicated that the gun was placed barrel first next to the victim's stomach when it discharged. A firearms expert testified that the weapon could not have fired without the trigger being pulled, even if the hammer had fallen accidentally as a result of rough

- 3 -

> handling. Moreover, testing revealed that the victim did not have visible gunpowder residue on his hands. According to the firearms expert, had the victim placed his hand on the 'cylinder' area of the gun where the cartridges were loaded or near defendant's hand on the trigger well of the gun, visibly obvious powder burns would have been present. Viewed most favorably to the prosecution, the evidence was sufficient to enable the jury to infer that defendant placed the barrel of the gun on the victim's stomach and pulled the trigger, contradicting defendant's claim that the gun discharged while the victim was grabbing it from him. Thus, sufficient evidence of malice was presented to support defendant's conviction of second-degree murder.

*People v. Britt*, No. 228017, 2002 WL 737867, at *1 (Mich. Ct. App. Apr. 23, 2002).

In challenging this ruling, Britt cannot overcome the "double layer of deference" applicable to sufficiency-of-the-evidence claims covered by AEDPA. *White v. Steele*, 602 F.3d 707, 710 (6th Cir. 2009). No one disputes that Wilde died from a bullet fired from Britt's gun, that Britt and Wilde were the only two people at the house at the time, that Britt handled the loaded gun shortly before it fired and that the lethal shot was fired from three inches or less away. The only questions are who pulled the trigger and with what mental state. In answering those questions, the other evidence admitted at trial—the slightly downward angle of the shot, the target of the shot (Wilde's stomach), the absence of gun powder residue on Wilde's hands, the burn mark on Britt's hand and the reality that the gun could not go off without placing four to thirteen pounds of pressure on the trigger—permitted the jury to infer that Britt had fired the shot and that, in doing so, had intentionally held out the loaded gun with his finger on the trigger immediately in front of Wilde. On this record, it makes no difference whether Britt intended to kill Wilde or to cause him bodily harm. It suffices that these actions satisfied the third way of showing malice under Michigan law—that Britt acted with a wanton and willful disregard of the likely risk he was creating. A jury

and reviewing court could reasonably conclude that the "natural tendency of such behavior is to cause death or great bodily harm." *Goecke*, 579 N.W.2d at 878.

That this train of reasoning turns on circumstantial evidence, as opposed to direct evidence, does not alter this conclusion. Even in direct-review cases, we have said that "[c]ircumstantial evidence alone is sufficient to sustain a conviction and such evidence need not remove every reasonable hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825 (6th Cir. 2006). Circumstantial evidence is "intrinsically no different from testimonial evidence," and "[i]n both instances, a jury is asked to weigh the chances that the evidence correctly points to guilt against the possibility of inaccuracy or ambiguous inference." *Holland v. United States*, 348 U.S. 121, 140 (1954). In some criminal cases, the State must prove intent, if it is to prove intent at all, only through circumstantial evidence, and nothing about that reality violates the Fourteenth Amendment. *See, e.g.*, *Jackson*, 443 U.S. at 324–25.

III.

Britt next argues that his conviction should be vacated based on prosecutorial misconduct. He objects that the prosecutor and prosecution witnesses referred at trial to his on-the-scene statement that "an accident happened here and I'm not gonna say anything more without an attorney." App'x at 135. But he did not object to the statement at trial, and the Michigan Court of Appeals held that he forfeited the claim. *See Britt*, 2002 WL 737867, at *2–3. This "independent and adequate state procedural rule" bars habeas review unless Britt can show "cause for the default

- 5 -

and actual prejudice as a result of the alleged violation," *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). He cannot.

Britt argues that his trial counsel was constitutionally ineffective for failing to object to these statements in an attempt to show "cause" for the default, *Coleman*, 501 U.S. at 753–54, and as an independent constitutional claim, *see Strickland v. Washington*, 466 U.S. 668 (1984). As a general matter, it is not easy to prevail on claims of ineffective assistance based on failures to object at trial because "the defendant must overcome the presumption that . . . the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689. "[E]xperienced trial counsel learn that objections to each potentially objectionable event could actually act to their party's detriment" and thus often "use objections in a tactical manner." *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir. 2006). To establish ineffective assistance, Britt must show that "defense counsel . . . so consistently fail[ed] to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice." *Id*.

Britt cannot meet this burden. Counsel had a strategic reason not to object here: He was the one who had opened the door to this evidence by telling the jury, "You'll find that Eric cooperated a hundred percent with the police. . . . He told individual police officers about the incident. You will find that he exhibited all the traits of a person that was not a murderer." R.8-10 at 98–99. The State introduced Britt's statement—"I'm not gonna say anything more without an attorney"—precisely to rebut this assertion. It was not unreasonable for counsel to assume, under these circumstances, that an objection might do more harm than good. Suppose he did object and the court admitted the

- 6 -

statement but instructed the jury to consider it for the purposes of evaluating counsel's assertion that "Eric cooperated a hundred percent" and that "he exhibited all the traits of a person that was not a murderer." That not only would be unhelpful, a reasonable lawyer might think, but it potentially could be quite damaging. On this record, Britt has not shown that trial counsel lacked a reasonable strategic basis for his decision, and as a result he cannot show "cause" for failing to raise the prosecutorial-misconduct claim in state court or that he is otherwise entitled to relief.

IV.

For these reasons, we affirm.