NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0821n.06

No. 12-4321

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Sep 11, 2013
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| CLAUDE PAYNE, | ) |
| | ) |
| Petitioner-Appellant, | ) |
| | ) ON APPEAL FROM THE |
| v. | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE SOUTHERN |
| WARDEN, LEBANON CORRECTIONAL | ) DISTRICT OF OHIO |
| INSTITUTION, | ) |
| | ) |
| Respondent-Appellee. | ) OPINION |
| | ) |

Before:  ROGERS and DONALD, Circuit Judges; ANDERSON, District Judge.*

**S. THOMAS ANDERSON, District Judge.**  Petitioner Claude Payne appeals the district

court's dismissal of his petition for a writ of habeas corpus.  The state court rejected Payne's claim

of ineffective assistance of trial counsel, holding that Payne could not demonstrate prejudice.

Because the district court properly held that the state court's decision was not objectively

unreasonable, we **AFFIRM** the judgment of the district court.

I.

Payne was arrested as a suspect in the shooting death of Franklin "Frenchie" Phifer.  A

Hamilton County, Ohio grand jury indicted Payne on one count of aggravated murder and one count

---

*The Honorable S. Thomas Anderson, United States District Judge for the Western District
of Tennessee, sitting by designation.

of having a weapon while under disability. On direct appeal the Ohio Court of Appeals set out the

following summary of the underlying facts of Payne's case and the evidence against him at trial.[2]

> On August 1, 2008, Franklin Phifer was shot repeatedly and died from his injuries. The following evidence was presented during Payne's trial for the murder of Phifer. Rose Coleman testified that she resided at 140 Huntington Place in Cincinnati, and that Phifer was shot in her front yard. Immediately preceding the shooting, Phifer had left Coleman's home on his bicycle after speaking with her on her porch. As Phifer started off, Coleman heard a gunshot and witnessed Payne running behind Phifer while shooting at him. Coleman dove for cover on her porch, but was able to view the shooting through the slats. Phifer ran towards her home, and as he collapsed in her front yard, Payne approached him and fired another shot.

> Coleman recognized Payne as the shooter and explained to the jury that Payne's family lived on her street. Coleman knew Payne by the first name of Lorenzo and hence identified Phifer's shooter as "Lorenzo" when she called 911. As she made the emergency call, Coleman witnessed Payne's van, which had previously been parked on her street, pulling away. Approximately a week after the shooting, Coleman identified Payne as the shooter in a photographic lineup.

> The state presented the testimony of Diondre Whitehead, Rose Coleman's next-door neighbor, in a video deposition. Whitehead testified that he had known Payne for years, and that Payne had visited with him prior to Phifer's shooting on August 1. According to Whitehead, on that date he had heard gunshots while sitting on his porch. He ran inside for safety, but through his window witnessed Payne stand over Phifer and shoot him in Coleman's yard. He further saw Phifer attempt to block the gunshots with his hands. Whitehead testified that he had purposely avoided the police for several days due to his fear of retaliation, but that he had eventually named Lorenzo Payne as Phifer's shooter and identified him in a photographic lineup.

> Deputy Coroner Gretel Stephens testified that Phifer had suffered at least four gunshot wounds. She identified two gunshot wounds to Phifer's chest, a defensive wound to his right middle finger, a wound to his upper left calf, and a grazing wound

---

[2]R.10-1, Page ID # 232  234. Payne has not challenged the state court's factual findings. Therefore, we presume this statement of facts to be correct. 28 U.S.C. § 2254(e)(1) (establishing a presumption of correctness as to a state court's factual findings that a petitioner may rebut only by clear and convincing evidence).

> to his right buttock. Stephens further testified that no stippling had been present, and that Phifer had not been shot from a distance closer than two feet.
>
> Payne put forth an alibi defense, alleging that he had been at his grandparents' house, also on Huntington Place, at the time of the shooting. Payne's grandfather Claude Hargrove testified that he had been on his front porch with Payne when the two heard gunshots. They immediately entered the house after hearing the shots. Both Payne's grandmother Caree Hargrove and his uncle Barry Hargrove provided similar testimony, stating that Payne had been on the front porch on August 1, but had run inside after hearing gunshots. Payne testified on his own behalf. He denied shooting Phifer and insisted that he had been on his grandmother's porch at the time of the shooting. With respect to Rose Coleman's testimony that she had seen Payne's van drive away immediately after the shooting, Payne offered contradictory testimony from his stepfather Arthur Lacey. Lacey testified that he had borrowed Payne's van on the day of the shooting, and that it had been in his possession the entire day.

R. 10-1, Page ID # 232 234.

Relevant in this appeal is defense counsel's cross-examination of police investigator David Gregory. R.13-3, Page ID # 577 81. Counsel questioned Gregory about Ms. Coleman's 911 call to report Phifer's murder, in which she remarked that the perpetrator of the crime was the same person who had shot at his girlfriend on Huntington Place on July 31, 2008, the day before Phifer's murder. During his pretrial investigation, Payne's trial counsel had requested any Cincinnati Police Department incident reports about the July 31 shooting and was told that no such reports existed. It is undisputed that Payne's trial attorney never made a request for any call records about the July 31 shooting. At trial, Payne's counsel raised the issue of the July 31 shooting with Gregory on cross-examination. Counsel asked Gregory if Payne was ever implicated in the July 31 shooting in any way or if Payne's girlfriend had made a complaint against him on July 31. Gregory answered "no" to all of counsel's questions. However, when asked if he was aware of a call being placed to the police about someone shooting at a female on July 31, Gregory answered that such a call was placed.

3

On re-direct, Gregory specified that the police received a call about shots being fired at a woman at 145 Huntington Place on July 31. *Id.* at 582 84.

At the conclusion of Gregory's testimony, Payne's trial counsel moved to strike Gregory's testimony concerning the contents of the call the police received about the July 31 shooting as inadmissible hearsay. Counsel conceded that he had not objected to the testimony at the time and explained to the trial court that he "was caught off guard" by Gregory's testimony about the police receiving the call on July 31. *Id.* at 589. The prosecution maintained that it had complied with defense counsel's request for any incident reports about the July 31 shooting. The prosecution opposed the motion to strike because defense counsel had opened the door to Gregory's testimony about the call on cross-examination. The trial court denied the defense's motion to strike the testimony. *Id.* at 588 99.

A Hamilton County jury found Payne guilty on both counts. The court sentenced Payne to a term of incarceration of 33 years to life. On direct appeal to the First District Court of Appeals for the State of Ohio, Payne sought review on the following grounds: (1) the verdict was against the manifest weight of the evidence; (2) his convictions were not supported by sufficient evidence; (3) his right to due process was violated; and (4) he was denied his Sixth Amendment right to effective assistance of counsel. Payne was represented on appeal by his trial counsel. Concerning the ineffective assistance of counsel claim, Payne's trial counsel described his own representation as deficient. Nevertheless, the First District Court of Appeals held that Payne "was in no manner prejudiced" by counsel's actions. Thereafter, Payne appealed to the Ohio Supreme Court, raising only the issue of ineffective assistance of counsel based on counsel's failure "to properly investigate

a shooting incident from the day prior to the fatal shooting" and the failure to "object to an entire line of questioning regarding the prior emergency call and the separate shooting." R.1-1, Page ID # 67 77. The Ohio Supreme Court declined to hear Payne's appeal.

Payne filed a federal habeas petition, asserting that he was denied the effective assistance of counsel where his attorney "failed to properly and adequately investigate the case" and "failed to make proper and timely objections to a prejudicial line of questioning regarding other act evidence which defense counsel failed to recognize." R.1, Page ID 5.[3] The district court held that the ruling of the Ohio Court of Appeals on the ineffective assistance of counsel issue, namely, that Payne was not prejudiced by counsel's performance, was "not objectively unreasonable." *Payne v. Warden, Lebanon Corr. Inst.*, No. 1:11-CV-193, 2012 WL 668724, at *4 (S.D. Ohio Feb. 29, 2012), *report & recommendation adopted*, 2012 WL 3835388 (S.D. Ohio Sept. 4, 2012). The district court granted Payne a certificate of appealability only as to his ineffective assistance of counsel claim "given that it is grounded in confessed deficient performance by counsel." *Payne*, 2012 WL 3835388, at *1.

## II.

We review the district court's denial of a habeas petition de novo. *Miller v. Colson*, 694 F.3d 691, 695 (6th Cir. 2012). Federal courts have jurisdiction to issue writs of habeas corpus under 28 U.S.C. § 2254, as amended by the Anti-terrorism and Effective Death Penalty Act (AEDPA).

---

[3]Payne also claimed that the evidence against him was not sufficient to support his convictions and that he was actually innocent of the charges. Payne has not raised these issues in this appeal.

Section 2254(d) strictly limits a federal court's authority to grant habeas relief only to those cases where the state court's adjudication of a claim on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013). "It is settled that a federal habeas court may overturn a state court's application of federal law only if it is so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Jackson*, 133 S. Ct. at 1992 (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)). Under this highly deferential standard, "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Richter*, 131 S. Ct. at 786 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)).

As the Supreme Court has observed, "[i]f this standard is difficult to meet, that is because it was meant to be." *Id.* The Supreme Court has described the purpose of § 2254(d) as a "guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Id.* (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979) (Stevens, J., concurring in judgment)) (internal quotation marks omitted). Thus, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786 87.

Payne argues that he was denied the effective assistance of counsel in violation of the Sixth Amendment and that he has satisfied the two-part test under *Strickland v. Washington*, 466 U.S. 668 (1984). Notably Payne briefs the de novo standard of review for the district court's judgment but

fails to address the correct standard of review under § 2254(d) and AEDPA. Instead Payne argues

the *Strickland* factors and proceeds to assert that the district court should have granted his habeas

petition. Payne's omission is significant because the relevant inquiry is not simply whether Payne

can satisfy the two-prong test in *Strickland* but whether the state court's application of *Strickland*

was objectively unreasonable under § 2254(d). Payne essentially invites us to review the state

court's decision de novo but without giving the Court any grounds to do so. As *Richter* explained,

"[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two

apply in tandem, review is doubly so." *Richter*, 131 S. Ct. at 788 (internal citations and quotation

marks omitted); *Ballinger v. Prelesnik*, 709 F.3d 558, 562 (6th Cir. 2013). Therefore, we decline

Payne's invitation to analyze the merits of his ineffective assistance claim de novo.

A.

Payne bases his ineffective assistance claim on three grounds: (1) his attorney's failure to

investigate the call the police received about the July 31 shooting; (2) counsel's cross-examination

of Gregory in which he opened the door to the testimony about the call; and (3) counsel's failure to

raise a hearsay objection to Gregory's testimony about the contents of the call on re-direct. Attorney

errors of these kinds may rise to the level of ineffective assistance. *See Jones v. Harry*, 405 F. App'x

23, 27 (6th Cir. 2010) ("Opening the door to damaging testimony can constitute deficient

performance."); *Britt v. Howes*, 404 F. App'x 954, 957 (6th Cir. 2010) (stating that counsel's

consistent failure to use objections, and the absence of any trial strategy or tactical considerations

for doing so, may establish ineffective assistance).

7

Even so, we need not address the issue of counsel's performance to resolve this appeal. Payne has failed to show that counsel's performance prejudiced his defense. *Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). In order to prove prejudice, Payne must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Richter*, 131 S. Ct. at 787 (quoting *Strickland*, 466 U.S. at 694). A reasonable probability is something more than a "conceivable effect" on the verdict but "a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 693). In other words, counsel's deficiency must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 787 88 (quoting *Strickland*, 466 U.S. at 687).

The Ohio Court of Appeals held on direct appeal that Payne did not suffer prejudice as a result of any errors committed by trial counsel. Payne has not shown why the decision of the Ohio Court of Appeals was "so erroneous that there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Jackson*, 133 S. Ct. at 1992 (quoting *Richter*, 131 S. Ct. at 786). The state court highlighted "the ample evidence of Payne's guilt, including eyewitness identification from two separate persons" and based on this record decided that "Payne was in no manner prejudiced by counsel's failure to object to questioning regarding the prior emergency call and shooting." R.10-1, Page ID # 237. Other record evidence supported the state court's conclusion as well. *Richter*, 131 S. Ct. at 785 86 (noting that "a habeas court must determine what arguments or theories supported or . . . could have supported, the state

court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision" of the United States Supreme Court). Two eyewitnesses to the murder, Coleman and Whitehead, lived on the same street with Payne's family and were well-acquainted with Payne. R.10-1, Page ID # 233. In fact, Whitehead testified that Payne had visited him earlier on the day of the murder. *Id.* The eyewitness testimony of Coleman and Whitehead agreed that Payne stood over Phifer and shot him at close range. *Id.* at 234 35. Coleman watched Payne fire the last shot at Phifer in her own front yard. *Id.* at 232 33. Whitehead further testified that Phifer put his hands up to shield himself, an account corroborated by the coroner's conclusion that Phifer was shot at a distance of no closer than two feet and that he suffered a defensive wound to his right middle finger. *Id.* at 233. The verdict shows that the jury found all of this testimony to be credible.

In light of "the strong eyewitness testimony against" Payne, *Ballinger*, 709 F.3d at 561, the state court did not violate clearly established federal law in rejecting Payne's ineffective assistance claim for lack of prejudice. The state court did not unreasonably "fail[] to evaluate the totality of the available . . . evidence" in determining whether, there existed "a reasonable probability that the result . . . would have been different." *Williams v. Taylor*, 529 U.S. 362, 397, 399 (2000); *see also Lafler v. Cooper*, 132 S. Ct. 1376, 1391 (2012) (quotation marks omitted). Nor was Payne's "a verdict or conclusion only weakly supported by the record." *Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). Therefore, the state court' conclusion that

Payne suffered no prejudice as a result of counsel's alleged deficiencies was not objectively unreasonable.

III.

Because the state court's ruling was not objectively unreasonable, we **AFFIRM**.