**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1793
_____

DARRELL BLOUNT,
                                    Appellant

v.

ADMINISTRATOR NEW JERSEY STATE PRISON;
THE ATTORNEY GENERAL OF THE STATE OF NEW JERSEY

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2-19-cv-00409)
District Judge: Honorable John Michael Vazquez
_____

Submitted Under Third Circuit LAR 34.1(a)
November 1, 2024

Before: HARDIMAN, PHIPPS, and FREEMAN, *Circuit Judges*.

(Filed: November 5, 2024)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

HARDIMAN, *Circuit Judge*.

Darrell Blount appeals the District Court's order denying his petition for a writ of habeas corpus. He challenges his conviction by a New Jersey state court, arguing that two of its evidentiary rulings violated his constitutional rights. We will affirm.

I[1]

In 2007, a man robbed a liquor store. According to the store's cashier, he was carrying a blue bag and wearing a green shirt, blue jeans, and a black hat. The robber, who appeared to be forty to forty-five, stood between five feet, eight inches and five feet, ten inches tall, had a medium build, and was African American. After walking around the store for two or three minutes, he asked the cashier for a six-pack of beer. When the cashier turned to retrieve the beer, the man pulled out what appeared to be a black, partially plastic handgun and demanded money from the register. The cashier refused. Instead, the cashier clicked a panic alarm button and then gave chase when the man fled from the store. The cashier noted that the man drove a silver Dodge Neon, recorded its license plate number, and reported the details to the police when they arrived on the scene.

The Dodge Neon was registered to Blount's sister, Suzette Bethea. When police arrived at her apartment complex, they found the car parked nearby. Shortly after police arrived at the complex, Blount entered the silver Dodge Neon and drove away. He didn't

---

[1] The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253.

get far. Police quickly stopped the vehicle, arrested Blount, and visually inspected the vehicle. On the seats and floor of the vehicle, they found a green shirt, a black hat, a blue bag, and what looked like a handgun.

Less than two hours after the robbery, police brought the cashier to the scene of the arrest to see if he could identify the man who robbed him. Upon the cashier's arrival at the scene, police removed a handcuffed Blount from the back of a police car. In the presence of a small crowd of agitated residents and several armed police officers, the cashier immediately identified Blount as the robber. Witnesses disagree about the distance between Blount and the cashier at the time of the identification—the cashier estimated 14 feet, one officer estimated 25 to 30 feet, and another officer estimated 10 feet. An officer present at the scene testified at trial that the cashier expressed "absolutely no doubt" when making the identification, stating "That's him." Dist. Ct. Dkt. No. 6-35, at 4.

The state trial court issued two pretrial evidentiary rulings related to this "show-up" identification.[2] Following a *Wade* hearing,[3] the court denied Blount's motion to exclude the identification on due process grounds. Although the court agreed with Blount

---

[2] A "show-up" describes a procedure in which "a single individual arguably fitting a witness's description is presented to that witness for identification." *United States v. Brownlee*, 454 F.3d 131, 138 (3d Cir. 2006).

[3] *See United States v. Wade*, 388 U.S. 218 (1967). "A *Wade* hearing occurs when a question arises concerning an identification procedure that has possibly violated a constitutional right." *United States v. Stevens*, 935 F.2d 1380, 1386 n.3 (3d Cir. 1991) (quoting Note, *Twenty-Years of Diminishing Protection: A Proposal to Return to the* Wade *Trilogy's Standards*, 15 Hofstra L. Rev. 583, 600 n.160 (1987)).

that police used suggestive procedures, it concluded that the cashier's identification satisfied due process because it had sufficient indicia of reliability. The court then granted the State's motion to exclude testimony from Blount's eyewitness reliability expert, Dr. Steven Penrod. It concluded that the expert's proposed testimony was within the "ken of the average juror" and therefore inadmissible at trial. Dist. Ct. Dkt. No. 6-24, at 8–9.

At trial, Blount challenged the reliability of the cashier's identification and introduced evidence of third-party guilt. Blount's sister testified that her son James previously had access to the Dodge Neon and sometimes drove it without her permission. She testified that sometime on the morning of the robbery, she noticed her car was missing from in front of her home and suspected her son, who lived with her at the time, had taken the car without permission. According to her testimony, she asked Blount, who also lived with her at the time, to retrieve the car from a nearby location her son frequented. In 2007, James was 18 years old and stood six feet, two inches tall. James testified that although he committed a robbery with a BB gun and the vehicle in 2008, he did not commit the robbery at issue.

A jury convicted Blount on three counts. The court sentenced him to life without parole on the robbery and possession of a weapon for an unlawful purpose convictions and to five years for the unlawful possession of a handgun conviction, to run concurrently with the life sentence. The Appellate Division of the New Jersey Superior Court affirmed Blount's convictions, and the New Jersey Supreme Court denied review. After unsuccessfully seeking postconviction relief in state court, Blount petitioned for habeas

relief under 28 U.S.C. § 2254. The District Court denied relief.

We issued a certificate of appealability to address two of Blount's claims: (1) "that the admission at trial of the show-up identification violated his Constitutional rights," and (2) "that the exclusion of expert witness testimony concerning eyewitness testimony violated his rights." App. 56–57.

## II

Blount claims that the admission of the show-up identification denied him due process of law. Because the parties agree that this issue was adjudicated on the merits in state court, Blount must show that the Appellate Division's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

The Supreme Court has developed a two-step test for determining whether the suggestive nature of an identification requires its suppression at trial. Courts first ask whether the procedures were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Neil v. Biggers*, 409 U.S. 188, 196–97 (1972) (quoting *Simmons v. United States*, 390 U.S. 377, 384 (1968)). If so, then courts consider "whether under the 'totality of the circumstances' the identification was reliable even though the confrontation procedure was suggestive." *Id.* at 199. Five factors inform this latter inquiry: "[1] the opportunity of the witness to view the criminal at the

5

time of the crime, [2] the witness' degree of attention, [3] the accuracy of his prior description of the criminal, [4] the level of certainty demonstrated at the confrontation, and [5] the time between the crime and the confrontation." *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977).

Blount claims that the Appellate Division's determination was "based on an unreasonable determination of the facts." 28 U.S.C. § 2254(d)(2). We disagree. The Appellate Division recounted the trial court's analysis, which "thoroughly addressed the five *Manson*/*Madison* reliability factors." App. 17. The Appellate Division emphasized that "the victim had the composure to push the panic alarm, run after defendant, get an accurate description of the vehicle, and write down the license plate number." App. 16. It also observed that "the show-up occurred within two hours of the incident, the victim immediately identified defendant without any uncertainty, the distance discrepancy between the victim and defendant at the show-up was minor, and nothing obstructed [the victim's] view of defendant." *Id.* And although the cashier failed to identify the defendant's facial hair, the trial court considered this oversight "insignificant" because the defendant's facial hair "looked like a few day's [sic] growth." *Id.* Given all this evidence, Blount cannot show that the Appellate Division made an "unreasonable determination" concerning the reliability of the cashier's identification. 28 U.S.C. § 2254(d)(2).

Blount further claims that the Appellate Division "failed to weigh '[a]gainst these factors . . . the corrupting effect of the suggestive identification itself.'" Blount Br. 17

(alteration in original) (quoting *Manson*, 432 U.S. at 114). This failure, Blount claims, is "an unreasonable application of" Supreme Court precedent. 28 U.S.C. § 2254(d)(1). Not so. The balancing of the *Manson* factors against the inherent suggestiveness of the show-up identification is another way of describing the "central question" in this type of case, which requires a "totality of the circumstances" inquiry. *Neil*, 409 U.S. at 199. The state courts answered that question here: as approved by the Appellate Division, the trial court "agreed that the identification was impermissibly suggestive[,] . . . weigh[ed] the totality of the circumstances and appl[ied] the five-factor *Manson*/*Madison* reliability test." App. 16. And we see nothing in the record that would lead us to conclude that the Appellate Division performed this analysis unreasonably. So the admission of the cashier's identification of Blount was not "an unreasonable application of[] clearly established Federal law." 28 U.S.C. § 2254(d)(1).

### III

Blount next claims that the exclusion of expert testimony violated his right to present a complete defense. The State urges us to apply deference under 28 U.S.C. § 2254(d), insisting that the Appellate Division adjudicated Blount's Sixth Amendment claim on the merits. Blount counters that the Appellate Division overlooked his Sixth Amendment argument, thereby mandating de novo review. We need not resolve this dispute over the standard of review because Blount's petition fails even under de novo review. *See Berghuis v. Thompkins*, 560 U.S. 370, 390 (2010).

"Whether rooted directly in the Due Process Clause of the Fourteenth Amendment or in the Compulsory Process or Confrontation Clauses of the Sixth Amendment, the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (cleaned up). But states retain "broad latitude under the Constitution to establish rules excluding evidence from criminal trials." *Nevada v. Jackson*, 569 U.S. 505, 509 (2013) (citation omitted). To show that exclusion of evidence violated his right to present a complete defense, a criminal defendant must establish that: "(1) he was deprived of the opportunity to present evidence in his favor; (2) the excluded testimony would have been material and favorable to his defense; and (3) the deprivation was arbitrary or disproportionate to any legitimate evidentiary or procedural purposes." *United States v. Cruz-Jiminez*, 977 F.2d 95, 100 (3d Cir. 1992). In this inquiry, "[e]vidence is material only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact." *Id.* (cleaned up).

Blount fails to show a "reasonable likelihood" that the excluded testimony "could have affected the judgment of the trier of fact." *Id.* (cleaned up). At trial he presented much of the same fact evidence he advanced during the *Wade* hearing through witness testimony and cross-examination. The proffered expert testimony did not address the facts of this case. For instance, the expert described scientific studies calling into question the reliability of cross-racial identifications, but he did not state whether the cashier was of a different race than Blount or explain how those scientific studies otherwise bear on

8

the cashier's identification. Similarly, the expert described studies suggesting "weapon focus" can lead to unreliable identifications, but he did not opine about the effect of that phenomenon on the cashier's identification here. Finally, the expert's testimony would not have strengthened Blount's third-party guilt defense, which ran headlong into the cashier's description of a perpetrator who was two decades older and several inches shorter than Blount's nephew, James. Because it was unlikely that the proffered expert testimony would have moved the needle in Blount's favor, we hold that it was not material evidence favorable to his defense. *See id.*

Nor has Blount shown that the trial court's exclusion of the expert's testimony was "arbitrary or disproportionate to any legitimate evidentiary or procedural purposes." *Id.* The trial court offered several reasons for its decision, including: (1) "defense counsel ha[d] the opportunity to vigorously cross-examine the witness regarding the identification;" (2) the expert's report provided "very little in the way of specifics in regard to [Blount's] case" with "no indication" that his "findings [were] applicable to the facts of this case;" and (3) the expert's testimony impinged on the jury's role to determine witness credibility, after the victim "ha[d] already been ruled reliable" by the trial court. Dist. Ct. Dkt. No. 6-24, at 7–8.

This layered decision hardly resembles the "rare[]" evidentiary rulings that the Supreme Court has found to violate the defendant's rights in past cases. *Jackson*, 569 U.S. at 509. Blount claims that one such case—*Crane v. Kentucky*, 476 U.S. 683 (1986)—is "indistinguishable" from his case "on the facts and the law." Blount Br. 29.

Not so. In *Crane*, the state court prohibited the defendant from presenting evidence of his confession's unreliability after it had deemed the confession voluntary. 476 U.S. at 684. The Supreme Court held the exclusion unconstitutional because "the requirement that the court make a pretrial *voluntariness* determination does not undercut the defendant's traditional prerogative to challenge the confession's *reliability* during the course of the trial." *Id.* at 688. Unlike Crane, Blount fully challenged the reliability of the cashier's identification at trial. He merely could not supplement that evidence with testimony from an eyewitness reliability expert.[4]

IV

The New Jersey state court's admission of the cashier's identification did not surmount AEDPA's stringent standard of review. And its exclusion of expert testimony did not violate the Sixth Amendment. Accordingly, we will affirm the District Court's order denying Blount's petition for a writ of habeas corpus.

---

[4] Judge Freeman would resolve Blount's exclusion-of-expert-testimony claim on materiality only. She does not join the conclusion that Blount failed to establish that the state court's exclusion of this evidence was not arbitrary or disproportionate to any legitimate evidentiary or procedural purposes.