**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

ANTONIO LAVON DOYLE,

*Petitioner-Appellant*,

v.

TERRY ROYAL; LAS VEGAS METRO POLICE DEPARTMENT; ADAM PAUL LAXALT,

*Respondents-Appellees*.

No. 20-99013

D.C. No.
3:00-cv-00101-RCJ-WGC

ORDER

Filed June 29, 2026

Before: William A. Fletcher, Eric D. Miller, and Kenneth K. Lee, Circuit Judges.

Order;
Dissent by Judge Tung

# SUMMARY[*]

## Habeas Corpus / Death Penalty

The panel denied a petition for panel rehearing and a petition for rehearing en banc in a case in which the panel affirmed in part and vacated in part the district court's denial of a federal habeas petition filed by a Nevada prisoner under sentence of death.

Judge Tung, joined by Judges Callahan, Collins, Bumatay, and VanDyke, dissented from the denial of rehearing en banc. Judge Tung wrote that in affording habeas relief to a state prisoner convicted of murder, the panel majority disregarded the deference owed state courts pursuant to the Antiterrorism and Effective Death Penalty Act, wrongly concluding that the Nevada Supreme Court unreasonably applied *Batson v. Kentucky*, 476 U.S. 79 (1986), when that court affirmed the trial judge's refusal to revisit a peremptory strike of a black prospective juror after the prosecution struck two other black prospective jurors but showed that those strikes were *not* racially motivated. Judge Tung wrote that the state court complied with *Batson*'s instruction to consider the "totality of the relevant facts" when the court affirmed the trial judge's decision not to revisit the first strike, and rather than defer to the state court's decision, the panel majority substituted its own view of *Batson* for what the case actually said.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

# ORDER

Judges W. Fletcher and Miller voted to deny the petition for panel rehearing, and Judge Lee voted to grant it. Judges Miller and Lee voted to deny the petition for rehearing en banc, and Judge W. Fletcher so recommended.

The full court was advised of the petition for rehearing en banc. A judge requested a vote on whether to rehear the matter en banc. The matter failed to receive a majority of votes of the nonrecused active judges in favor of en banc consideration. Fed. R. App. P. 40.

The petition for panel rehearing and rehearing en banc (Dkt. No. 78) is **DENIED**.

---

TUNG, Circuit Judge, joined by CALLAHAN, COLLINS, BUMATAY, and VANDYKE, Circuit Judges, dissenting from the denial of rehearing en banc:

The panel majority in this case disregarded the deference we owe state courts pursuant to the Antiterrorism and Effective Death Penalty Act (AEDPA). In affording habeas relief to a state prisoner convicted of murder, the panel majority concluded that the Nevada Supreme Court unreasonably applied *Batson v. Kentucky*, 476 U.S. 79 (1986), when that court affirmed the trial judge's refusal to revisit a peremptory strike of a black prospective juror after the prosecution struck two other black prospective jurors but showed that those strikes were *not* racially motivated.

Respectfully, the panel majority's conclusion was wrong. *Batson* does not require, much less clearly require, a finding of error here. Nor did the state court unreasonably

apply *Batson*.  To the contrary, the state court complied with *Batson*'s instruction to consider the "totality of the relevant facts" when the court affirmed the trial judge's decision not to revisit the first strike.  Rather than defer to the state court's decision, however, the panel majority substituted its own view of *Batson* for what the case actually said.  I dissent from the denial of rehearing en banc.

## I.

## A.

Over thirty years ago, Antonio Doyle was convicted and sentenced to death for the murder of a twenty-year-old woman, Ebony Mason.  *Doyle v. State*, 112 Nev. 879, 884 (1996).  On the night of January 15, 1994, Doyle and two other men brought Mason from a party to a friend's house. *Id.* at 885–86.  Mason appeared drunk, and each of the men proceeded to have sex with her.  *Id.*  The men then borrowed a truck to drive her home.  *Id.*  During that drive, Mason told the men that she would report them for rape; she then jumped out of the truck.  *Id.*  Doyle and the other men coaxed her back into the truck and decided to kill her.  *Id.*  They drove her to a remote spot in the Nevada desert.  *Id.*  When they arrived, they pulled Mason from the truck and then strangled and beat her.  *Id.*  During the beating, Doyle kicked Mason in the head and stomped on her body.  *Id.*  Two of the men held her down, while the other repeatedly smashed a brick on her face.  *Id.*

Mason's body was discovered a day later.  She was nude and lying face down with hands extended overhead.  *Id.* at 884–85.  A four-inch stick protruded from her rectum.  *Id.* at 885.  A nearby hole contained a broken condom, a condom tip, an open but empty condom package, and two small packages of taco sauce.  *Id.*  Footwear impressions were also

found on the scene. *Id.* The autopsy confirmed that Mason died either from asphyxia due to strangulation or from blunt trauma to the head. *Id.* She had nine broken ribs, multiple areas of external bruising, contusions, lacerations, abrasions, and a ligature mark on the anterior surface of her neck. *Id.* About 200 milliliters of blood filled her chest cavity. *Id.* She had severe lacerations to her head and a subarachnoid hemorrhage (resulting in a thin layer of blood surrounding her brain), indicating blunt force trauma to her skull. *Id.* Her back and chest bore patterned contusions consistent with footwear impressions found at the crime scene. *Id.* at 886. These footprints matched the tread of a pair of Adidas athletic shoes later recovered from Doyle's residence. *Id.*

## B.

Doyle and his co-conspirators were arrested and charged with murder, conspiracy to commit murder, kidnapping, and sexual assault. *Id.* at 884. During jury selection, the state court trial judge permitted the prosecutor to exercise his first peremptory challenge against Ms. Velasquez (whom the courts and parties have presumed is black). *Doyle v. Royal*, 161 F.4th 570, 575 (9th Cir. 2025); *see also Doyle*, 112 Nev. at 888 n.1. Doyle objected under *Batson*, which forbids a prosecutor from excluding potential jurors on the basis of race and sets forth a three-step process when such a challenge to a peremptory strike has been made: first, "the defendant must make out a prima facie case 'by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose'"; second, "the 'burden shifts to the State to explain adequately the racial exclusion' by offering permissible race-neutral justifications for the strikes"; third, "the trial court must then decide . . . whether the opponent of the strike has proved purposeful racial discrimination." *Doyle*, 161 F.4th at 578 (citations omitted).

Doyle objected to the State's first peremptory strike, arguing that the State must explain why it struck Ms. Velasquez. 14-ER-3803. The judge declined to require the prosecutor to explain this strike "because [he] d[id]n't think that there's been any pattern made. This was the first peremptory challenge made; there are several other African-Americans [in the remaining jury pool]." 14-ER-3804.

The prosecutor used its next peremptory strike against Ms. Samuels, a black prospective juror. 14-ER-3927–29. When Doyle objected on *Batson* grounds, the judge ordered the prosecutor to respond and provide a race-neutral explanation—proceeding to Step 2 of the *Batson* analysis. 14-ER-3929. The prosecutor explained that the prospective juror had a brother serving a sentence for first-degree murder, and that he was concerned that this juror would "think[] about her brother in relationship to what she should do here in this courtroom, and it might put a little too much pressure on [her]." 14-ER-3930. The judge found this race-neutral explanation to be credible. 14-ER-3931. The prosecutor then used his remaining six peremptory challenges to strike non-black potential jurors. *Doyle*, 112 Nev. at 888. The jury was sworn in with one black juror on the panel. *Doyle*, 161 F.4th at 576; 13-ER-3692.

When selecting alternate jurors, the prosecutor peremptorily struck Ms. Smith, a third black prospective juror. 14-ER-4037. When Doyle objected again on *Batson* grounds, the judge again required an explanation. 13-ER-3691, 3699. The prosecutor explained that Ms. Smith had numerous family members who had been arrested and that he had judged her to be one of the least favorable prospective jurors "before [he] even knew anything concerning her particular race" because she was "going to harbor biases against the State" (13-ER-3700–01)—particularly because

"she believed police officers could be rough and rude." *Doyle*, 112 Nev. at 888. The judge accepted the State's race-neutral explanation and rejected Doyle's arguments that the State engaged in racial discrimination. 13-ER-3708.

Doyle requested that the judge revisit the prosecutor's initial peremptory strike and order that the prosecutor explain the reasons for his strike. 13-ER-3703. Finding that unnecessary, the judge declined to do so. *Id*.

The jury found Doyle guilty of all counts and imposed the death penalty. *Doyle*, 112 Nev. at 884. The state trial court also sentenced Doyle to consecutive life terms for first-degree kidnapping and sexual assault, and a concurrent six-year term of imprisonment for conspiracy to commit murder. *Id.*

## C.

Doyle appealed his conviction and sentence to the Nevada Supreme Court. As relevant here, Doyle challenged the state trial court's decision not to revisit the prosecutor's initial peremptory strike as contravening *Batson*. The Nevada Supreme Court concluded that the trial court did not err and affirmed. For the next three decades, Doyle then pursued postconviction relief in state court and federal court. For our purposes here, the federal district court denied Doyle's petition for habeas relief under 28 U.S.C. § 2254, concluding that the Nevada Supreme Court did not unreasonably apply *Batson* when it "determined that, after the challenges of Samuels and Smith were found to be race-neutral, there remained only one challenge objected to by the defense, the Velasquez challenge, and therefore no pattern, and no prima facie case of a *Batson* violation with respect to the Velasquez challenge." *Doyle v. Filson*, 2020 WL 6205842, at *21 (D. Nev. Oct. 22, 2020).

This court vacated that ruling. *Doyle*, 161 F.4th at 582–83. The panel majority, over Judge Lee's dissent, held that the state court's decision unreasonably applied *Batson*. The panel majority acknowledged that AEDPA "prescribes a highly deferential standard of review of state-court decisions when challenged in federal habeas petitions[.]" *Id*. at 582. Nonetheless, the panel majority concluded that the Nevada Supreme Court's decision "cannot withstand scrutiny even under that standard," *id*., because *Batson* (in the panel majority's view) prohibited the Nevada Supreme Court from considering race-neutral explanations for subsequent strikes in assessing whether the defendant demonstrated a prima facie case of discrimination for the initial strike. *Id*. at 581–82. As a remedy, this court remanded to the federal district court to hold an evidentiary hearing to elicit the prosecutor's reasons for striking the first black prospective juror. *Id*. at 583.

## II.

### A.

AEDPA "sharply limits" federal review of state-habeas claims. *Klein v. Martin*, 607 U.S. 213, 220 (2026) (per curiam). A federal court may grant habeas relief on a state-habeas claim resolved on the merits only when the state court's "decision" was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). A federal court's review is thus limited to protecting against "'extreme malfunctions' in the state courts' adjudication of constitutional claims." *Klein*, 607 U.S. at 220 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). Put another way, it is not enough to show "clear error"; "far more than" that, the habeas claimant "must

instead establish that the state court 'blunder[ed] so badly that every fairminded jurist would disagree' with the decision." *Id.* (quoting *Mays v. Hines*, 592 U.S. 385, 392 (2021) (per curiam)).

The claimant here has come nowhere close to meeting that high bar. Simply put, there is no clearly established law, as determined by the U.S. Supreme Court, that would require the state judge here to revisit the initial peremptory strike. The claimant (Doyle) argued that the state court was required to revisit its decision to accept the prosecution's first peremptory strike of a black prospective juror—even after the prosecution had offered credible race-neutral explanations for its subsequent peremptory strikes of two other black prospective jurors. The Nevada Supreme Court rejected Doyle's claim. The Court stated that "[t]he district court declined to order the State to provide an explanation for striking [the first black prospective juror], stating that an explanation of the State's reasons was unnecessary in light of the fact that it was the State's first peremptory challenge, and no pattern of racial exclusion was evident." *Doyle*, 112 Nev. at 889 n.2. The Court then "conclude[d] that, after accepting the State's explanation for the exclusion of [the two other black prospective jurors], it was not error for the district court to refuse to require an explanation for the exclusion of [the first black prospective juror]." *Id.*

Contrary to the panel's contention, it is not at all apparent what error the Nevada Supreme Court committed—let alone what "extreme malfunction" it produced that would justify habeas relief. When the State exercised its first peremptory strike (of a black prospective juror) there was no pattern that could raise a possible inference of racial discrimination, and so the state judge properly declined to require the State to provide a race-neutral explanation at that time. Nor is there

any clearly established federal law requiring the state judge to *revisit* that initial decision "even after later strikes established a pattern of race-based strikes." *Doyle*, 161 F.4th at 580. Even the panel majority appears to acknowledge the lack of clearly established federal law on that point. *See id.* (citing *Higgins v. Cain*, 720 F.3d 255, 267 (5th Cir. 2013) (noting "the want of authority directly addressing the issue of whether a trial judge faced with multiple *Batson* challenges is required to revisit earlier *Batson* challenges")); *see also United States v. Bernal-Benitez*, 594 F.3d 1303, 1312–13 (11th Cir. 2010) (finding no precedent requiring revisitation); *Williams v. Haviland*, 394 F. App'x 397, 399 (9th Cir. 2010) (rejecting relief under AEDPA because precedent requiring reconsideration was lacking).

Indeed, there appears to be an even stronger basis for refusing to revisit an initial decision to strike when subsequent strikes were indisputably determined *not* to be motivated by race. If there was no "pattern" that "might give rise to an inference of discrimination" at the time of the initial strike (*Batson*, 476 U.S. at 97), then surely there is no pattern of discrimination *after* the State has validly explained that its later strikes were not motivated by race. The later explanations only *strengthen* (not weaken) the state court's basis for affirming the trial court's refusal to revisit its initial finding that the defendant failed to make out a prima facie case of discrimination.

Remarkably, the panel majority resisted that conclusion. It found obvious error (and an extreme malfunction) with the state court's affirmance of a trial court's decision not to revisit an earlier strike in light of the additional relevant information it received—namely, confirmation that subsequent strikes were *not* racially motivated. But that conclusion is wrong and contrary to *Batson* itself. In *Batson*,

the Supreme Court made clear that, "[i]n deciding whether the defendant has made the requisite [prima facie] showing, the trial court should consider *all relevant circumstances*." 476 U.S. at 96–97 (emphasis added); *see also id.* at 93–94 (stating that the defendant "may make out a prima facie case of purposeful discrimination by showing that the *totality of the relevant facts* gives rise to an inference of discriminatory purpose" (emphasis added)); *Johnson v. California*, 545 U.S. 162, 168 (2005) ("[T]he defendant must make out a prima facie case 'by showing that the *totality of the relevant facts* gives rise to an inference of discriminatory purpose.'" (emphasis added) (citation omitted)). The totality of relevant circumstances includes "the prosecutor's questions and statements . . . in exercising his challenges," which "may support or *refute* an inference of discriminatory purpose." *Batson*, 476 U.S. at 97 (emphasis added). And those circumstances surely include, therefore, the prosecutor's statements concerning the reasons for exercising peremptory challenges. Yet the panel majority would fault the state court for engaging in what *Batson* expressly requires—a consideration of "all relevant circumstances." *Id.* at 96. At least, for AEDPA purposes, *Batson* does not "establish clearly the specific rule" that the panel majority concludes was violated. *Lopez v. Smith*, 574 U.S. 1, 6 (2014).

The panel majority would extract a supposed rule from *Batson*—that a trial judge cannot consider race-neutral explanations given for subsequent strikes in assessing whether to revisit a previous strike. But *Batson* announced no such rule. Attempting to find such a rule regardless, the panel majority quoted (and misread) *Batson*'s observation that "a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury *solely* on evidence concerning the prosecutor's exercise of

peremptory challenges at the defendant's trial." *Doyle*, 161 F.4th at 581 (quoting *Batson*, 476 U.S. at 96) (emphasis added by the panel majority). The panel majority then concluded that "[t]he Nevada Supreme Court's rule contravenes that principle by making the existence of a prima facie case depend *not* solely on 'the prosecutor's exercise of peremptory challenges' but instead on the additional evidence developed at steps two and three." *Id.* (emphasis in original).

That is a flagrant misreading of *Batson*. *Batson* did not say that additional evidence could *not* be considered in assessing a prima facie case. All *Batson* said was that one *may* establish a prima facie case solely on evidence concerning the prosecutor's exercise of peremptory challenges. Contrary to the panel majority's reading, *Batson* did not say that an assessment of the prima facie case *must* depend solely on evidence of peremptory strikes. The panel majority treated the word "solely" in the *Batson* quotation as *restricting* the *permissible* bases for a prima facie case only to the evidence of peremptory strikes. That is simply wrong as a matter of basic grammar: the word "solely" in the *Batson* quotation refers to one of the ways in which a defendant *could* make out a prima facie case (*i.e.*, "solely" on evidence concerning peremptory strikes in his case). It does not preclude the defendant (and a court) from looking at additional evidence.

Context also shows that the *Batson* quotation refers to a defendant's ability to make a prima facie showing "by relying solely on the facts concerning [jury] selection *in his case*" as opposed to in other cases. 476 U.S. at 95 (emphasis in original). In so concluding, *Batson* overruled *Swain v. Alabama*, 380 U.S. 202 (1965), which had required a defendant to make out a prima facie case of purposeful

discrimination "on proof that the peremptory challenge *system* was 'being perverted' in that manner." *Batson*, 476 U.S. at 91. Whereas *Swain* had required proof that the prosecutor had struck "black jurors *beyond the facts of his own case*," *Batson* rejected that requirement and permitted a prima facie case to be made on the facts of the defendant's own case. *Batson*, 476 U.S. at 91–92 (emphasis added). Viewed in context, then, the quotation in *Batson* that the panel majority relied on has nothing to do with prohibiting a trial court from considering race-neutral explanations given for peremptory strikes in evaluating whether to revisit an earlier peremptory strike.

Even on the panel majority's own terms, its interpretation fails. *Batson* permits a prima facie case based "solely on evidence *concerning* the prosecutor's exercise of peremptory challenges at the defendant's trial." *Id.* at 96 (emphasis added). And evidence "concerning" (or relating to) the prosecutor's exercise of peremptory challenges naturally includes explanations given for that exercise. Nothing in the *Batson* quotation prohibits a state court from considering information concerning subsequent strikes to determine whether a prima facie case can be made.

In any event, the quotation must be viewed along with *Batson*'s other clear statements—namely, that a trial court "should consider all relevant circumstances." *Id*. at 96–97. Again, the panel majority ignores that critical instruction.

Accordingly, the Nevada Supreme Court did not err—much less unreasonably apply established federal law as determined by the U.S. Supreme Court—in rejecting Doyle's *Batson* claim and holding that the trial judge was not required to revisit the initial peremptory strike.

**B.**

A few other arguments remain to be addressed. The panel majority relied on *Purkett v. Elem*, 514 U.S. 765 (1995), but that case does not demonstrate an error here, let alone an unreasonable application of clearly established law. There, the Supreme Court held that it was error to combine "*Batson*'s second and third steps into one, requiring that the justification tendered at the second step be not just neutral but also at least minimally persuasive, *i.e.*, a 'plausible' basis for believing that 'the person's ability to perform his or her duties as a juror' will be affected." *Id.* at 768 (per curiam) (citation omitted). But that conclusion has nothing to do with whether a state judge can refuse to revisit an earlier strike in light of a prosecutor's race-neutral explanations for subsequent strikes. In short, *Purkett* does not constitute relevant clearly established federal law, the unreasonable application of which would justify habeas relief in this case. It does not bear on the question here at all.

The panel majority contended that the Nevada Supreme Court's ruling would give a "free pass" to prosecutors "to exclude one black prospective juror because of race, no questions asked." *Doyle*, 161 F.4th at 581. That is an uncharitable reading of the Nevada Supreme Court's opinion. Far from giving prosecutors a "free pass," the state court would be permitted to consider "all the relevant circumstances" in assessing whether a prima facie case has been established—hardly a "no questions asked" regime and entirely consistent with *Batson*.

Finally, the panel majority improperly based its decision on the State's interpretation of what the Nevada Supreme Court held. Seizing on a concession made by the State's attorney at oral argument, the panel majority adopted the

State's interpretation of the Nevada Supreme Court's decision and found that interpretation to be an unreasonable application of clearly established federal law. *Id.* at 580–81.

To explain more fully: the panel majority believed that the Nevada Supreme Court's decision was susceptible of two interpretations. The first interpretation would apparently be sustained under AEDPA, but the second interpretation would not survive AEDPA's deferential review, according to the panel majority. Under the first interpretation, a state judge need not revisit an initial peremptory strike because at the time there was no pattern of discriminatory strikes (even though later strikes suggested a pattern). Under the second interpretation, the state judge need not revisit an initial peremptory strike because the State provided race-neutral explanations for later strikes and thus those later strikes "no longer count[ed]" in assessing whether a defendant established a prima facie case of discrimination with respect to the first stricken prospective juror. *Id.* at 581. The panel majority concluded that, because the prosecutor supposedly adopted the second interpretation, such a concession required the granting of habeas relief.

Neither interpretation constitutes an unreasonable application of clearly established federal law. *See supra* II.A. But even assuming that the second interpretation posited by the panel majority was such an unreasonable application, the panel majority should not have reflexively "accept[ed]" the prosecution's interpretation of the Nevada Supreme Court's decision. The panel majority was not bound by the State attorney's interpretation, and it should have instead given the state court the "benefit of the doubt," adopting a plausible reading that, even the panel majority appears to acknowledge, would have survived AEDPA review. *Felkner v. Jackson*, 562 U.S. 594, 598 (2011) (per

curiam) (citation omitted). Instead, the panel majority chose a reading that (in its view) ran afoul AEDPA. That reflects a "readiness to attribute error [that] is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

*          *          *

This case follows an unfortunate pattern of our court's misapplication of AEDPA. Despite the Supreme Court's repeated admonition to us (specifically) "against 'framing our precedents at such a high level of generality,'" this court has continued to do just that in evading the deference we are supposed to give state courts. *Lopez*, 574 U.S. at 6 (quoting *Nevada v. Jackson*, 569 U.S. 505, 512 (2013) (per curiam)). *Batson* simply does not address "the specific question presented by this case" (*id.*)—whether a trial court was wrong to refuse to revisit an initial peremptory strike after subsequent strikes of black prospective jurors were justified on race-neutral grounds. I respectfully dissent from the denial of rehearing en banc.